## Gillan's Executors *versus* Dixon *et al.*

1. A child died intestate, unmarried and without issue, her personal estate vested in her father and mother jointly and absolutely under Act of April 8th 1833, ? 3 (Intestates).

2. The interest of the parents in a note due her was enforceable only through administration on her estate.

3. Until distribution of the child's estate, the interest of the parents remained joint.

4. The father died, the notes not having been paid, and there having been no administration of the child's estate, there was no question about reduction into possession by the father, although the notes were found in his possession at his death.

5. On the death of the father, the title to receive the estate of the child devolved on the mother who survived him.

6. The father and mother did not hold as ordinary joint-tenants but by the entireties.

7. The Act of April 11th 1848 (Married Women) did not change this relation.

May 10th 1870. Before THOMPSON, C. J., AGNEW and SHARS-WOOD, JJ.

Error to the Court of Common Pleas of *Franklin county:* No. 106, to May Term 1870.

This was an amicable action of assumpsit, entered October 26th 1868, between William D. Dixon and Martha his wife in her right, and John Walker and Sarah Ann his wife in her right, plaintiffs, and William Gillan, John Gillan and Samuel H. Gillan, executors of William Gillan, deceased, defendants.

Elizabeth Gillan, a daughter of the decedent, owned two notes, one for $1000, due by the commissioners of Franklin county, and one for $200, due by John Walker. She died in September 1866, intestate, unmarried and without issue, leaving to survive her, her father and mother, Sarah Gillan. At the time of her death she was living with her father. William Gillan died February 18th 1867, leaving his wife, the above-named Sarah Gillan, and six children, William, John, Samuel H. (the defendants), Martha, Sarah Ann (the plaintiffs), and Mary. By his will he gave legacies to his three daughters, and gave the residue of his estate to his three sons. The commissioners' note was collected April 1st 1867, by the defendants, as part of William Gillan's estate: the other note was unpaid. Sarah Gillan, the widow, died intestate January 29th 1868. Administration of her estate was granted to the defendants.

The question in the case was, whether the notes of Elizabeth Gillan became the property of her father in his lifetime, and thus passed into his estate, or whether they survived to the mother and were to be distributed as her estate.

It was " agreed that no exception shall be taken either to the parties to the action or to the form of the action. That the

plaintiffs are to have the same right to recover in this action as though they were the administrators of Sarah Gillan, widow of William Gillan, Sr., deceased, or of Elizabeth Gillan, a deceased daughter of said William Gillan, Sr."

On the trial, October 20th 1869, before Rowe, J., the above facts were proved; it was also proved that " there was no change of the (commissioners') note from Elizabeth Gillan to William Gillan ;" that William Gillan, in the winter before his death, notified the commissioners that he would collect the note on the following 1st of April. They gave in evidence this receipt on the note :—

" Chambersburg, April 1st 1864, received of J. G. Elder $50, interest in full to date on within note.

" WILLIAM GILLAN, Sr.,<br>" For ELIZABETH GILLAN."

The defendants gave evidence that the notes were found after William Gillan's death in his desk, with his other papers, and were inventoried with his personal estate. The defendants, as administrators of their mother, never treated these notes as part of her estate, but held them as part of their father's estate. Elizabeth held the papers till her death. For the plaintiffs it was testified that these notes were about the time of Elizabeth's death in her father's desk, with other notes belonging to her.

On the trial, it was agreed by the parties that if there should be a recovery by the plaintiffs, the amount recovered should be held by the defendants as if administrators, &c., of Elizabeth Gillan.

The plaintiffs' points were :—

1. The facts as proved do not amount to such a reduction into possession of the choses in action of Elizabeth Gillan, by her father William Gillan in his lifetime, as to destroy at his death the right of the mother to the whole estate.

2. The money in dispute belonged originally to Elizabeth Gillan, and at her death would in law be recoverable by her administrator. If her administrator would in law have a right to recover this money from the defendants, the plaintiffs may do so, because by the agreement filed in this case they are entitled to occupy the position of the administrator of Elizabeth Gillan..

3. That under no circumstances would more than one-half of the fund pass to William Gillan, deceased.

The defendants' 3d point was :—

3. That the question of reduction is for the jury, and inasmuch as William Gillan, after Elizabeth's death, received the interest from the commissioners on the county note, having fixed the day for the payment of the note, having exercised acts of ownership over the chose in action, in his lifetime, this was a reduction of

the property to his possession, and made it part of his estate, and plaintiffs cannot recover.

The court charged : * * *

" It does not appear to be important where the notes were found, or whether William Gillan, Sr., deceased, had them in his possession before his daughter's death, or formally took them into his possession afterwards.

" For it is indisputable that he did not receive the money which they secured, or any part of it, or surrender them and take new notes in his own name, or assign them.　He simply kept them as they were, and they were found in his desk after his death, as Elizabeth had held them and left them.

" These notes were inventoried by the executors of William Gillan as part of his estate; they have received the money for the $1000 county note, and they hold the Walker note and the money as their father's executors.　Being his residuary legatees, they in fact hold the Walker note and the money received on the county note as their own.　These defendants are also the administrators of Sarah Gillan, the mother.　But they say they never treated this money as part of their mother's estate, but hold and claim it as part of their father's estate.　It was to determine whether this fund, or any part of it, is part of the father's estate that this amicable action was instituted.　Perhaps a better form of proceeding might have been adopted to settle this question, but there is no difficulty in settling it in this form, under the terms of the agreement of counsel.

" If the choses had been converted into money, or anything been done by William Gillan in the lifetime of himself and wife to destroy their joint nature (for upon the death of Elizabeth they became joint choses in the father and mother), then, doubtless the father, William, would have taken one-half of the sum to himself, and the mother, Sarah, the other half, and upon the death of William his executors would have rightfully claimed and held his one-half as part of his estate.　But at the time of William Gillan's death these notes or choses were the joint property of himself and his wife, and as such survived to the surviving wife.　For a suit brought upon these notes in the lifetime of the father and mother must have been in their joint names, and it is a general rule that in all cases when it is necessary to bring the suit in the joint names of husband and wife during coverture, the cause of action survives to the wife for for her benefit.　When money is secured to the husband and wife by a promissory note, the wife is held to be entitled to survivorship in the money.

" [We are, therefore, of opinion that these notes constituted no part of the estate of William Gillan, Sr., deceased], and that the plaintiffs, under the agreement, are entitled to recover the amount

of the two notes, to be held by them and accounted for as administrators of Elizabeth Gillan. Thus, after payment of Elizabeth's debts, the balance will be distributed among the next of kin of Sarah Gillan, the mother, who survived."

The court affirmed all of plaintiffs' points, and negatived the defendants' points.

The verdict was for the plaintiffs for $1485.56.

The defendants took a writ of error and assigned for error the answers to the points and the part of the charge in brackets.

The case was submitted in the Supreme Court on the paper-books. Neither of the paper-books was signed by counsel.

The defendants in error cited Act of April 8th 1833, § 3, Pamph. L. 316, Purd. 563, pl. 15; Frankenfield v. Gruver, 7 Barr 448; Lodge v. Hamilton, 2 S. & R. 493; Woelper's Appeal, 2 Barr 71; Wintercast v. Smith, 4 Rawle 182; Hartman v. Dowdell, 1 Id. 279; Hind's Estate, 5 Whart. 138; Timbers v. Katz, 6 W. & S. 290; Gray's Estate, 1 Barr 329; Stewart's Appeal, 3 W. & S. 476; Swoyer's Appeal, 5 Barr 377; McDowell v. Potter, 8 Id. 189; Gochenaur's Estate, 11 Harris 460; Tritt v. Cowell, 7 Casey 228; Stuckey v. Keefe, 2 Id. 397; Diver v. Diver, 6 P. F. Smith 106; Tyler on Infancy and Coverture 382.

The opinion of the court was delivered, May 19th 1870, by

Agnew, J.—When Elizabeth Gillan died, her personal estate vested in her father and mother jointly and absolutely under the 3d section of the Act of 8th April 1833 relating to intestates. This interest of the father and mother was a chose in action, enforceable only through administration upon the estate of Elizabeth. That their interest is joint in its nature has been held and is evident from the intent of the act: Frankenfield v. Gruver, 7 Barr 448; Hamm v. Meisenhelter, 9 Watts 349. Until distribution of the estate of Elizabeth and payment of the sum coming to the father and mother, their interest necessarily remained joint. There can be no question of reduction to possession by William Gillan, the father, in this case, for the estate of Elizabeth remained without administration, and the notes evidencing the debts due to her estate remained unpaid at William Gillan's death. It is clear therefore that the title to receive the share thus devolving on the father and mother by the intestacy of Elizabeth survived to Mrs. Sarah Gillan on the death of William Gillan, her husband. This resulted from their relation as husband and wife. Owing to their legal unity they did not stand as ordinary joint tenants to each other, but were seised or possessed as the case might be of the estate or interest in the property by entireties and not *per my et per tout*. This is well settled in this state both as to real and personal estate: Johnson v. Hart,

[Gillan's Executors v. Dixon.]

6 W. & S. 319; Robb v. Beaver, 8 Id. 107; Fairchild v. Chastelleux, 1 Barr 176; Stuckey v. Keefe, 2 Casey 397. Nor does the Act of 1848 relative to the property of married women change this principle of the common law: Diver v. Diver, 6 P. F. Smith 106. That act was intended to protect the property of the wife from the dominion or control of the husband, but not to change the nature of her estate, or to destroy the legal unity of person which characterizes their relation to each other. We perceive no error, therefore, in the doctrine held by the court, and the

Judgment is affirmed.