## Madden et al. *v.* Gosztonyi Savings and Trust Company, Appellant.

Argued April 12, 1938.  Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

478

*Joseph S. Clark, Jr.,* of *Dechert, Smith & Clark,* with him *H. P. McFadden,* for appellant.

*Russell C. Mauch,* with him *Milton J. Goodman,* for appellees.

OPINION BY MR. CHIEF JUSTICE KEPHART, June 30, 1938:

Appellees, husband and wife, sued to recover the balance of a savings account in appellant bank. This account had been in the name of both as "Joint Owners. Payable to either before or after the death of the other." The bank asserted that because of an "Agreement of Waiver and Release" executed by the husband for a substantial consideration during the reorganization of the bank, there was no longer any liability on the account. Appellees contended, however, and the trial court ruled, that, the deposit being held by the entireties, the wife's failure to join personally in this agreement rendered the release ineffective. Assigned as error is the failure of the court below to enter judgment n. o. v. for appellant bank.

Except for a few American jurisdictions, which by statute or otherwise have abandoned the common law, tenancies or estates by entireties are universally recognized as a traditional method of holding property. They have existed for centuries.[1] In this State they were first discussed elaborately in *Johnson v. Hart,* 6 W. & S. 319, and *Fairchild v. Chastelleux,* 1 Pa. 176. They undoubtedly became, with the bulk of the common law, part of the law of Pennsylvania.

The nature of estates by the entireties is generally well understood. They are simply a form of co-owner-

[1] See *Doe v. Parratt,* 5 Term. R. 652, 654, 101 English Reprints 363; *Stuckey v. Keefe's Executors,* 26 Pa. 397, 399; *Back v. Andrews,* 2 Eq. Abr. 230, 2 Vern. 120, 24 English Reprints 1; Coke upon Littleton, section 291; 2 Blackstone 182; 1 Preston on Estates 131; 2 Kent, Commentaries 132.

ship, a particular type of "joint estate," held by husband and wife. At common law four main types of *"joint estates"* or *co-ownership* existed: joint tenancies, tenancies in common, coparcenary, and tenancies by entireties. Each had salient differences: Tiffany, Real Property (2d ed.), vol. 1, chapter VII, analyzes them fully. See also Tiedeman, Real Property (3d ed.), chapter IX. Joint tenants at common law hold the entire estate by the half and by the whole, *per my et per tout.* See *Leach's Estate*, 282 Pa. 545, 549.[2] Joint tenancies have four unities: interest, title, time and possession. We need not discuss fully the attributes of tenancy in common or coparcenary. See 1 Tiffany, Real Property 643. In some of these estates the owner may voluntarily alien or partition his portion, or it may be reached by creditors. See *Davidson v. Heydon,* 2 Yeates 459; *Lessee of Simpson v. Ammons,* 1 Binney 175.

Tenancies by the entireties, our major concern, resemble joint tenancies. All four of the unities are present. But as Blackstone says (page 182) : ". . . if an estate in fee be given to a man and his wife, they are neither properly joint-tenants, nor tenants in common: for husband and wife being considered as one person in law, they cannot take the estate by moieties, but both are seised of the entirety, *per tout, et non per my:* the consequence of which is, that neither the husband nor the wife can dispose of any part without the assent of the other, but the whole must remain to the survivor." To the four unities of a joint tenancy therefore is added the unity of the husband and wife as a person in the law. Coke upon Littleton, section 291, in treating the subject of entireties, refers to the unity of husband and wife as the basis for the estate and relies on Bracton's

---

[2] But, as stated in that case, the Act of March 31, 1812, (5 Sm. L. 395), had the effect of abolishing survivorship as an ordinary incident of joint tenancies, although survivorship could exist if specifically stipulated.

maxim: "Man and wife are as one person, for they are one in flesh and blood." *As a consequence of this relation many incidents flow therefrom quite different from those arising from a joint tenancy or any other form of co-ownership.* While a tenancy by entireties resembles a common law joint tenancy in that each spouse owns the whole and therefore is entitled to enjoyment of the entirety and to survivorship,[3] it differs in that neither one has any individual portion which can be alienated or separated, or which can be reached by the creditors of either spouse. See *Meyer's Estate (No. 1)*, 232 Pa. 89; *Beihl v. Martin*, 236 Pa. 519; *Bostrom v. National Bank of McKeesport*, 330 Pa. 65; *Pennsylvania Trust Co. v. Mischik*, 96 Pa. Superior Ct. 255. The existence of the estate depends on the marital relationship. At common law, *one of the incidents* which arose from this same relationship was the *control* exercised by the husband over the estate and its management. See *Fairchild v. Chastelleux*, supra, decided under the common law in 1845. Additional instances of the husband's control and the effect of the married women's acts, will be discussed later. Because of these important differences between tenancies by entireties and the other types of

---

[3] Another incident of holding *per tout* is that, upon the decease of one of the spouses there is no state inheritance tax. As stated in *Berhalter v. Berhalter*, 315 Pa. 225, 227: "The interest of the surviving tenant in the whole is not increased by the extinguishment of the interest of the other by death, but rather is freed of the restraints imposed upon it by the presence of an interest of like degree and kind which existed while both lived." See *Leach's Estate*, 282 Pa. 545, 549; *Haggerty's Estate*, 311 Pa. 503; *Lowry's Estate*, 314 Pa. 518; *In re: Estate of Mary R. Vandergrift*, 105 Pa. Superior Ct. 293. While ordinary joint tenancies have more recently been specifically subjected to inheritance tax by the legislature, the exemption of tenancies by entireties continues to be recognized: Act of June 20, 1919, P. L. 521, art. I, section 1, as amended June 22, 1931, P. L. 690, section 2, and July 14, 1936, P. L. 44, section 2. The federal law is different: *Tyler v. United States*, 281 U. S. 497.

co-ownership, cases involving these other types[4] are unsatisfactory authorities in the solution of entireties problems; and, while in some jurisdictions statutes have been held to abolish the common law estate by entireties and the distinctions as above described, Pennsylvania has not done so.

Our several married women's acts have not disturbed this common law estate though they materially affected the incident of the husband's control. This was first decided in *Diver v. Diver*, 56 Pa. 106. It was there held that the unity of husband and wife was not destroyed by the Act of April 11, 1848, P. L. 536. Husband and wife could still hold by the entireties. See also *Bates v. Seely*, 46 Pa. 248. In *McCurdy and Stevenson v. Canning*, 64 Pa. 39, we stated that, while prior to the Act of 1848 the husband had control of the estate during his life and might convey it and mortgage it for that period, the Act prevented the husband from doing so. See *Gillan's Executors v. Dixon*, 65 Pa. 395. The Act of June 3, 1887, P. L. 332, did not alter this conclusion, nor did the Act of June 8, 1893, P. L. 344: *Bramberry's Estate*, 156 Pa. 628; *Hetzel v. Lincoln*, 216 Pa. 60; *Meyer's Estate (No. 1)*, 232 Pa. 89; *Beihl v. Martin*, 236 Pa. 519; *O'Malley v. O'Malley*, 272 Pa. 528.

Not only has the legislature not abolished estates by entireties but it has expressly recognized them in various statutes,[5] and has thus approved the established rule that husband and wife may hold property by entireties.

Such tenancies therefore continue to be recognized as a valid and desirable method of holding property be-

[4] *Waters v. Nevis*, 31 Cal. App. 511; *Pierson v. Union Bank & Trust Co.*, 181 Ky. 749.

[5] Act of June 11, 1913, P. L. 468; Act of May 24, 1923, P. L. 446; Act of May 10, 1927, P. L. 884; Revised Price Act of June 7, 1917, P. L. 388, section 2(f); Act of June 20, 1919, P. L. 521, art. I, section 1, as amended June 22, 1931, P. L. 690, section 2, and July 14, 1936, P. L. 44, section 2.

tween husband and wife, and the presumption remains that where property is held in the names of husband and wife they hold it by entireties and not as ordinary joint tenants or as tenants in common: *Bramberry's Estate,* supra.

There can be no question that personal property in Pennsylvania may be held by husband and wife by the entireties. The rule is grounded on sound principles of common law and is concurred in by the majority of common law jurisdictions. Blackstone recognizes the existence of joint interests in personalty. Any doubt which may have arisen as to entireties in personalty is due to the fact that under the common law when a married woman acquired personalty it immediately became the husband's exclusive property if reduced to possession. But where he failed to take possession complete ownership was not acquired, and survivorship followed, when one spouse predeceased the other, to the exclusion of the next of kin of the deceased spouse. See *Lodge v. Hamilton,* 2 S. & R. 490; *Gibson v. Todd,* 1 Rawle 452; *Frankenfield v. Gruver,* 7 Pa. 448; *Slaymaker v. Bank of Gettysburg,* 10 Pa. 373. Survivorship was thus present at common law as an incident of a tenancy by the entireties.

Many types of personalty have been held as subjects of tenancies by entirety. *Gillan's Executors v. Dixon,* supra, so decided as to the personal estate of a deceased daughter passing to her parents; *Bramberry's Estate,* supra, a bond and mortgage; *Parry's Estate,* 188 Pa. 33, letters of credit purchased by the husband in the name of himself and his wife. In *Klenke's Estate (No. 1),* 210 Pa. 572, a bank deposit in the name of husband and wife was held to be an account by the entireties. See also *Blick v. Cockins,* 252 Pa. 56; *Berhalter v. Berhalter,* 315 Pa. 225; *Bostrom v. National Bank of McKeesport,* supra; *Pennsylvania Trust Co. v. Mischik,* 96 Pa. Superior Ct. 255; *Milano v. Fayette T. & T. Co.,* 96 Pa. Superior Ct. 310. In *Sloan's Estate,* 254 Pa. 346, a sim-

ilar status was given certificates of deposit in the names of husband and wife. Various other types of obligations and securities have been held to be the subject of tenancies by the entireties. In *Wilbur Trust Co. v. Knadler,* 322 Pa. 17, mortgage trust certificates; in *Loesch's Estate,* 322 Pa. 105, bonds and mortgages; in *Magee v. Morton B. & L. Assn.,* 103 Pa. Superior Ct. 331, building and loan stock.[6] See also *Rhodes's Estate,* 277 Pa. 450; *Sparrow v. Mowers,* 315 Pa. 460.

We have held in a long line of cases that bank deposits and similar choses in action, payable to husband and wife, or to husband or wife, are tenancies by the entireties with all the incidents relating thereto. Here a bank account is held by the husband and wife together. Title to the account must vest somewhere in some form recognized by the law. There is nothing in the nature of a bank account payable to husband and wife, or husband or wife, which would rebut the presumption that title was in husband and wife by the entireties. See *Parry's Estate,* supra. In *Klenke's Estate (No. 1),* supra, a bank account in the names of husband and wife with the provision that "We or either of us may draw upon the bank during the continuance of said account" was held to go to the wife on the death of the husband because survivorship is a direct result of tenancy by entireties. It was there argued that the word "or" defeated that result by preventing the deposit from being a tenancy by entireties, but the Court expressly rejected the argu-

---

[6] The wide majority of common law jurisdictions are in accord with the Pennsylvania rule. See *Dickson v. Jonesboro Trust Co.,* 154 Ark. 155; *Rauhut v. Reinhart,* 180 A. 913 (Del. O. C.); *Flaherty v. Columbus,* 41 D. C. App. 525; *Bailey v. Smith,* 89 Fla. 303; *Baker v. Baker,* 123 Md. 32; *Woodard v. Woodard,* 216 Mass. 1; *Allen v. Tate,* 58 Miss. 585, semble; *Lomax v. Cramer,* 202 Mo. App. 365; *George v. Dutton,* 94 Vt. 76. Wisconsin recognized the existence of entireties in personalty prior to the married women's property act: *Aaby v. Kaupanger,* 221 N. W. 417 (Wis.). Various of the above cases, it may be noted, involved deposits in

ment.   See also *Blick v. Cockins,* supra.   In *Sloan's Estate,* supra, certificates of deposit were made payable to the order of the husband or wife.   The Court expressly relied on the doctrine that the certificates were held by the entireties to reach the conclusion that the incident of survivorship was present.  See *Berhalter v. Berhalter,* supra.   In *Wilbur Trust Co. v. Knadler,* supra, it was decided that the word "or" made no difference in the mortgage trust certificates involved, and that they were owned by the entireties with survivorship.   In *Bostrom v. National Bank of McKeesport,* supra, an account payable to either spouse was not subject to set-off by the bank for the debt of one of them, because the account was by the entireties.   The same result followed in *Pennsylvania Trust Co. v. Mischik,* supra, where it was held that, since it was such an account, the husband could not pledge it for his individual debt.

But it is urged upon this Court that "unity of control" is lacking and the account is therefore not held by the entireties, because of the absence of an essential element.   Nothing in the development of tenancies by the entireties requires such a "unity of control" that one spouse may not authoritatively act for both, nor is Blackstone's statement that "neither the husband nor the wife can dispose of any part without the assent of the other" denied.

Where a deposit is payable to "husband *and* wife,"— a deposit by entireties—the husband and wife may withdraw the funds if they sign together.   But there is nothing in the law relating to entireties that would prevent the wife from giving the husband express authority to sign for her as her agent and withdraw for both of them, although no such authority may be implied.   When, on

the names of husband and wife.   See *Dickson v. Jonesboro Trust Co., Bailey v. Smith, Baker v. Baker,* all supra.   See contra: *Abshire v. State,* 53 Ind. 64; *Franklin National Bank v. Freile,* 173 A. 93, 176 A. 167 (N. J.); *Matter of Albrecht,* 136 N. Y. 91; *Winchester v. Cutler,* 194 N. C. 698.

the other hand, an account is made payable in its creation to either "husband *or* wife," there is an immediate expression of authority, of agency to act for both. As an incident of these estates by entireties is the power that each gives the other, at the time of the estate's creation, to act for the other. This conclusion is beyond debate. In *Milano v. Fayette T. & T. Co.,* supra, the Superior Court discussed the difference between deposits in the name of husband and wife and those in the name of husband or wife. There the deposit read "and," and the bank paid out on an order drawn by the husband alone. President Judge KELLER clearly distinguished the cases where deposits were payable to either husband or wife, on the ground that while in such cases there can exist authority to withdraw the corpus, there was no such authority to the husband alone where the words "payable to husband and wife" were used. See also *O'Malley v. O'Malley,* supra; *Gasner v. Pierce,* 286 Pa. 529; *Berhalter v. Berhalter,* supra.

Moreover, in answer to the argument that where one spouse can withdraw all the funds it should prevent a tenancy by the entireties from arising, there exist many instances at common law in which one spouse could exercise great control, short of destruction, over the res of the entireties. By virtue of his control over all the marital property, a husband, *prior to the married women's acts, could,* as has been said, *even alienate or mortgage* the property for the duration of his life. The wife *could be dispossessed* for that period and could claim no rights unless and until she survived her husband. In *Fairchild v. Chastelleux,* supra, to repeat, a husband was allowed to maintain an action of trespass alone, without joining his wife. In *Stuckey v. Keefe's Executors,* 26 Pa. 397, 401, the Court said: "In that case [if the estate is by the entireties] she is compensated *for the control which her husband exercises during his life,* by the enjoyment of the whole estate in fee simple, if she survive him." [Italics added.] In *Gillan's Executors*

*v. Dixon,* supra, at page 399, it was stated that the very purpose of the Married Woman's Act of 1848 was to protect her property from the common law dominion or control of the husband. See *McCurdy and Stevenson v. Canning,* supra; *Beihl v. Martin,* supra. In *O'Malley v. O'Malley* and *Gasner v. Pierce,* both supra, a property held by entireties was leased by one spouse. The question was whether a payment of rent to either spouse was a valid payment by the tenant. Justice SIMPSON in the *O'Malley* case, pointed out that in an estate by the entireties, all belongs to both and that before the married women's acts the husband had complete control over the property as an incident of the marital relationship. Even after these acts either spouse might lease and collect the rent as an incident of that relationship. At p. 533, the Court said: ". . . presumptively the moneys received will be expended for the benefit of both of them." In *Gasner v. Pierce,* supra, page 533, the Court said: "Both are entitled to the entire income to be used for their joint benefit, and neither may deprive the other of the use of the rents accruing, unless by agreement." At page 535: "Legally, the husband acted for himself and as agent of the wife, executing the lease in the right of both. . . . Here, though either husband or wife could lease, both were entitled to the income. When the former acted, it was presumably with her authority, and on her behalf." In *Berhalter v. Berhalter,* supra, the same problem was exhaustively treated. At page 227, this Court said: "The incidents of such an estate are unity of interest, title, time and possession, with the right of survivorship. . . . It is the contention of appellant that when the parties expressed in the agreement that 'either of them' could withdraw all or any part of the fund, one of the elements essential to an estate by entirety was lacking, which she describes as the unity of control, but, while unity of control must exist, *O'Malley v. O'Malley,* 272 Pa. 528, this is bound up in the four incidents of such an estate. The fund with-

drawn is still subject to the legal status of the estate, and it has stamped on it in the hands of one who withdrew it all the elements of a trust."

The authorities thus cited would seem to show that either spouse presumptively has the power to act for both, so long as the marriage subsists, in matters of entireties, without any specific authorization, provided the fruits or proceeds of such action inures to the benefit of both and the estate is not terminated. But neither may by such action destroy the true purpose of the estate by attempting to convert it or a part of it, in bad faith, into one in severalty.

As stated, where the estate stands in the name of husband *and* wife there is no implication of agency to conclude the estate. Thus where a husband and wife hold a mortgage, the husband has no authority to take a deed to himself and in that way destroy the wife's interest in the mortgage: *Sparrow v. Mowers,* supra. Nor is there a presumption of agency in the wife to convey real estate held by entireties without the husband's joinder: *Thees v. Prudential Ins. Co.,* 325 Pa. 465. See *Schroeder v. Gulf Refining Co. (No. 1),* 300 Pa. 397, where a release was given by the husband to the wrongdoer without the joinder of the wife.

Where a deposit is made payable to either spouse, agency or authority exists by implication, and the husband or the wife may, from that authority, withdraw the entire account, but the money thus withdrawn *is impressed with the entirety provision that it is the property of both,* and any one dealing with such specific property as severalty, knowing it belongs to both, must submit to the consequences. However, the bank, acting in good faith, is protected when funds are withdrawn by either: *Berhalter v. Berhalter,* supra.

Textbooks, and cases depending on statutes, which criticise the rule, are of little help when considering common law entireties. E.g., Zollman on Banks & Banking, Volume 5, Section 3225; *Murphy v. Michigan Trust Co.,*

221 Mich. 243; *Siemianoski v. Union State Bank of South Chicago,* 242 Ill. App. 390. The common law is clear that wherever a joint estate is held by husband and wife, it is an estate by entireties. If one of the unities is lacking, then, by the common law, there can be no joint tenancy or entirety. We need not further discuss the authorities of other jurisdictions. Cf. *Milan v. Boucher,* 189 N. E. 576 (Mass.) ; *In re Johnson's Estate,* 218 N. W. 739 (Neb.).

The lower court held the deposit a tenancy by the entireties, but, by concluding the release was invalid for want of written joinder of the wife, overlooked the power granted under the agency expressed in the creation of the account. Certainly the power to withdraw all of the funds includes within it the power to preserve or protect the fund and to consent to a reorganization of a "closed" bank for that purpose, though it made the deposit somewhat smaller but did not entirely deplete the funds. This act did not destroy the res of the estate but inured to its preservation. The refusal in *Schroeder v. Gulf Refining Co. (No. 1),* supra, to hold the release enforceable by the obligor in no way controls the instant case, for there the building was already destroyed, and no authority was manifested in the creation of the estate which would allow the husband to terminate the obligor's liability, the new res of the estate. Here, however, such authority existed when the deposit was made.

This conclusion establishes the immunity of the appellant bank, but, as above shown, in no way affects the rights as between the husband and wife. *O'Malley v. O'Malley, Gasner v. Pierce* and *Berhalter v. Berhalter,* indicate that, while the bank may be relieved by the act of one of the spouses in receiving payment or in freeing it of liability, the rights between husband and wife are not determined.

It has been urged upon the Court that this was not a tenancy by the entireties, a view which would cause tens of thousands of deposits, long made in reliance on the

established rule of this Court, to be subject to the action of the creditors of either the husband or the wife. Moreover, the legislature has, on the faith of our settled interpretation of the law, expressly recognized the freedom of estates by entireties as we have defined and recognized them from the transfer inheritance tax, upon the death of one of the spouses.[7] Countless deposits have been made in banks in the names of husband and wife, or husband or wife, upon the assurance of the decisions of this Court, and of legislative pronouncements, that they were not to be subject to that tax. To change or modify our conception of the estate by entireties would have the effect of laying open to taxation all such deposits. It would include many where the estates of decedents have been settled and the period of limitations[8] has not yet run. On reason and authority we find no cause to change our conception of such estates. It would overrule many decisions and overthrow what has now become a fixed rule of property. The great public interest involved in these deposits is therefore apparent, and for this reason it has been incumbent upon the Court to reaffirm the principles applicable to tenancies by entireties and to refuse to overrule them.

Judgment reversed at cost of appellees.

[7] Act of June 20, 1919, P. L. 521, art. I, section 1, as amended June 22, 1931, P. L. 690, section 2, and July 14, 1936, P. L. 44, section 2.

[8] Act of June 20, 1919, P. L. 521, art. IV, section 39, as amended July 14, 1936, P. L. 44, section 3.