## Hensinger et al. v. Hensinger et al.

*Donald E. Wieand* and *Butz, Hudders, Tallman & Rupp,* for plaintiffs.

*Arcus E. Shaffer,* for defendants.

HENNINGER, P. J., June 15, 1954. — Plaintiffs brought this complaint in equity averring that they are two of the sons of Sylvester Hensinger, deceased, that Mamie E. Hensinger is their mother and with Sylvester Hensinger, who died September 21, 1951, the surviving parent of Cleon Hensinger, their deceased brother, who died an intestate, childless, unmarried minor on January 13, 1922, that Marilyn J. and Carson E. Hensinger are the only other brother and sister of plaintiffs and that defendant Kubelius is the straw man in certain deeds whereby at the advice of attorney Daniel J. McCarthy, the parties to this action on January 19, 1952, conveyed their interest in 201 South Second Street, Emmaus, Pa., to Kubelius, who on the same day, in three deeds, conveyed a three-fifth interest therein to defendants, a one-fifth interest to plaintiff Wilbert A. Hensinger and wife and a one-fifth interest to plaintiff Kermit F. Hensinger and wife.

Plaintiffs further aver that these premises were the property, inter alia, of one Frank Hensinger, who died seized thereof on August 20, 1921, having first made his last will and testament in two parts, both dated August 2, 1921, which provided, in the first part, probated shortly after his death: "I give, devise and bequeath all my property real and personal unto my beloved wife Agnes J. during her lifetime. After her death my estate shall be converted and distributed as directed in a will dated even date herewith and not be opened until the death of my wife Agnes J.," and in the second part, probated December 30, 1932, after the death of Agnes J. Hensinger:

"I, Frank C. Hensinger, of the Borough of Emaus, Lehigh Co. Pa. do hereby make this will, operative after the death of my wife Agnes J.

"1. I give and devise unto my son Sylvester the house and lot, situated S. E. Cor. of S. 2nd St., Emaus, Pa. known as No. 201 S. 2nd St., during his lifetime, after his death unto his children."

Plaintiffs pray that the deeds dated January 19, 1952, be set aside and declared void and of no effect and that the parties be restored to their rights in said property as they existed immediately prior to the execution of the deeds and that Mamie E. Hensinger be enjoined from exercising any rights of ownership in this property.

The prayer for relief is based upon an averment that the deeds were executed solely in reliance upon the legal advice of the attorney for all parties that under the will of Frank Hensinger and because of the death of Cleon Hensinger, the parties had the respective shares in the property reflected by the deeds back to the respective parties.

Defendants have filed a preliminary objection that they have a full and complete defense to plaintiffs' claim which does not require the production of evidence to sustain it, namely, that upon the facts submitted, the advice of Daniel J. McCarty was a true statement of the law and that, therefore, no ground existed to set aside the deed.

We take this preliminary objection, which is worded like objection no. 7 under the old Equity Rule No. 48, to be a demurrer under Pa. R. C. P. 1017(b) (4) made applicable to equity actions by Pa. R. C. P. 1509.

We note also that, since plaintiffs' wives obtained an interest in the premises through the interchange of deeds, we could not grant plaintiffs the relief they seek without the joinder of their wives since they would be adversely affected by a decree setting aside the deed.

Since they are not protesting against the deeds and since our decision upholds the validity of the deeds, we feel that we can decide the point on which decision is sought, namely, the interest of Mamie E. Hensinger in the property, without the joinder of plaintiffs' wives.

It will be seen that any share of Mamie E. Hensinger in the property must descend to her through the death of her son Cleon, intestate and seized of a one fifth vested interest in the property, leaving his parents to survive him as his heirs. Since the share devolved to the parents by the same act of inheritance, they would have held the share as tenants by the entireties with sole ownership in Mamie E. Hensinger upon her husband's death: Gillan v. Dixon, 65 Pa. 395, 398; Meisenhelter's Estate, 297 Pa. 292, 294; Barati's Estate, 89 Pitts. L. J. 84.

It is clear that, had testator expressed his desires in one testamentary instrument, the share of Cleon Hensinger would have been a vested remainder which would descend to his parents as heirs. By the wills of Frank Hensinger we have a life estate to Agnes, followed by a life estate to Sylvester, with the remainder to Sylvester's children. We have the familiar situation of a gift to a class—the children of Sylvester Hensinger. As stated in Edwards' Estate, 255 Pa. 358, 362, quoting from Keller v. Lees, 176 Pa. 402 (407):

" 'Where real property is limited by way of a remainder to a class of persons, some or all of whom are unborn if any of them come in esse before the determination of the particular estate, the property will vest in such person or persons subject to open and let in the other members of the class who happen to come in esse before the determination of the particular estate.' Had this devise been to the life tenant and the remainder to her children or to the children of another, the remainder would have been contingent until the birth of a child in whom it would have been vested immediately subject to let in after-born children."

Since Cleon Hensinger was born in the lifetime of the first life tenant, the remainder vested in himself and other children of Sylvester Hensinger. His estate might have been—and perhaps was—diminished by the birth of other children of Sylvester Hensinger, but remained vested in him from the date of his birth: McCauley's Estate, 257 Pa. 377.

Cleon's interest was not divested by his death during the lifetime of either life tenant but passed to his heirs, his parents, of whom Mamie E. Hensinger is the survivor: Marshall's Estate, 262 Pa. 145, 147; Reed's Estate, 307 Pa. 482, 483.

Other criteria in determining whether the estate was vested or contingent are (1) that there is no gift over should no member of the remainder class survive the life tenants: Brown's Estate, 289 Pa. 101, 114; Bechtel's Estate, 85 Pa. Superior Ct. 14, 17; (2) in the residuary clause there is provision made for a gift over in case one of the remaindermen should not survive, whereas there is no such provision in the clauses affecting the property in question; (3) the law favors vested rather than contingent remainders, Brown's Estate, supra, page 114. See also on most of these points, Breinig's Estate, 25 Lehigh 417.

Plaintiff contends that the language of the two wills shows that vesting was not intended and very properly argues that if that is the plain meaning of the wills, resort may not be had to any of the rules of construction hereinbefore applied: Bumm's Estate, 306 Pa. 269, 272; Price's Estate, 279 Pa. 511, 513.

The language pointed to as preventing the vesting of the remainder in the class of grandchildren of Frank Hensinger is contained in the introductory clause of the second will, "operative after the death of my wife, Agnes J." Since Cleon Hensinger died during the lifetime of his grandmother, Agnes J. Hensinger, a holding that the remainder might have vested upon her

death rather than upon testator's death would not help Mamie E. Hensinger in this case.

We are of the opinion that the language quoted is descriptive of the will rather than a directive as to the time of vesting of any of the devises contained therein.

The general rule is that "every will shall be construed, with reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator unless a contrary intention shall appear by the will": Section 9 of the Wills Act of June 7, 1917, P. L. 403, 20 PS §221.

The device of executing two wills, the one to be probated at once and the other upon the happening of some event expected to happen after the death of a testator does not change this rule: Pfeifle v. Bethlehem Public Library, Inc., 11 D. & C. 555, 557. In the same case and in others (Wikoff's Appeal, 15 Pa. 281; Grubb's Estate, 174 Pa. 187, and Shoemaker's Estate, 47 D. & C. 337), it has been held that separately executed wills may and must be probated as one.

The Pfeifle case also holds that any interested party could have compelled immediate probate of the other part of the will at once despite a testator's device to withhold disclosure of his testamentary intentions, probably to prevent possible bickering among his children during a widow's lifetime. The fact that no one insisted upon immediate probate of both parts of his will does not affect the interpretation of the two parts as one, speaking as of the date of testator's death.

Having adopted the device of two wills, the language "operative after the death of Agnes J. Hensinger," was in our opinion used by testator merely as a clause identifying the relation between the two wills and the second will was intended as a later revelation of a contemporaneous testamentary intent and was not in-

tended to act as a suspension of the vesting of title in the beneficiaries in the second will.

The word "operative" is inapt as a directive for the vesting of estates and clearly applies to the will rather than to the estates created by it. Despite this language, the will was actually in law operative from the date of testator's death or it is no will at all. The words, being then supernumerary, have no bearing upon the interpretation of the two wills which must be read together as of the date of testator's death.

For this we can cite no precedent, because it is unlikely that exactly the same language has been used in the same somewhat unusual situation. Precedents, however, are of little value in the interpretation of wills: Bumm's Estate, supra, 272, and cases therein cited.

Suffice it to say that, taking both wills together, giving to the expression "operative after the death of Agnes F. Hensinger," the weight it deserves and applying the rules of construction to the dispository language, we are convinced that the remainder vested in Sylvester Hensinger's children from Frank Hensinger's death or as they were born and that Mamie E. and Sylvester Hensinger inherited from their son Cleon upon his death during Agnes J. Hensinger's lifetime, subject to the life estates of Agnes J. and Sylvester Hensinger.

The foundation stone upon which plaintiffs' case rests, namely, a mistake in the legal advice given, is therefore itself without foundation and the preliminary objection by way of demurrer must be sustained.

On the present state of the record we could not consider whether the transfer of deeds was or was not a family settlement, much favored in the law. Our disposition of the case makes such consideration unnecessary now or later. Since plaintiffs have already stated their best case, no amendment need be allowed.

Now, June 15, 1954, defendants' preliminary objection by way of demurrer is sustained and the above-captioned complaint is dismissed at plaintiffs' cost.