HOME SAVINGS & LOAN ASSOCIATION *v.*
POTTER ET AL.

(No. CI-82-146—Decided
November 27, 1984.)

Court of Common Pleas of
Paulding County.

*Young, Bandy & Jones Co., L.P.A.,*
and *Erwin J. Bandy,* for plaintiff.
*Lucy Potter, pro se.*
*Terry L. Cornelius,* for defendant
Jonas Lengacher.
*J. David Webb,* prosecuting at-
torney, for defendant county treasurer.
*Joseph W. O'Neil,* for defendant
Rodney M. Arthur Co., L.P.A.
*James M. Sponseller,* for defendant
Norbert L. Wyss.
*J. David Webb,* for defendants

Phyllis Watts, Henrietta Potter and Michael Potter.

*Russell J. McMaster,* for Roy De-Wayne Watts.

HITCHCOCK, J. Plaintiff's action resulted in a foreclosure sale of a house and 3.01 acre lot which produced $7,632.11 in excess of plaintiff's judgment, taxes, and costs, which amount, by reason of defendant Henry L. Potter's conviction on July 14, 1981 of the murder of his wife, Gloria, on November 5, 1978, is now claimed by the other defendants, and which plaintiff in its motion for summary judgment listed as liens and other claims existing on February 25, 1984, as follows:

"1. Rodney M. Arthur Co., L.P.A.

"Mortgage 181/325 filed 2/13/81, [total due of] $10,532.50 with interest at the rate of 10% per annum from 9/1/81 and costs.

"2. Norbert L. Wyss

"Mortgage 183/32 filed 7/16/81, $16,069.00 with interest at the rate of 8% per annum from 9/4/81 and costs.

"3. Jonas Lengacher

"Mortgage 183/52 filed 7/21/81, $22,079.05 plus interest and costs.

"4. Phyllis Watts, Henrietta Potter, Michael Potter & Roy DeWayne Watts

"Undivided ½ interest in subject real estate as natural children of Gloria Potter, deceased.

"5. Henry L. Potter and Lucy Potter

"Balance."

The question for decision is whether or not R.C. 2105.19 has any application to the facts of this case. Effective January 1, 1976, this section read as follows:

"(A) No person who is convicted of or pleads guilty to a violation of or complicity in the violation of section 2903.01, 2903.02 or 2903.03 of the Revised Code shall in any way benefit by the death. All property of the decedent, and all money, insurance proceeds, or other property or benefits payable or distributable in respect of the decedent's death, shall pass or be paid or distributed as if the guilty person had predeceased the decedent.

"(B) A person prohibited by division (A) of this section from benefiting by the death of another is a constructive trustee for the benefit of those entitled to any property or benefit that the person has obtained, or over which he has exerted control, because of the decedent's death. A person who purchases any such property or benefit from the constructive trustee, for value, in good faith, and without notice of the constructive trustee's disability under division (A) of this section, acquires good title, but the constructive trustee is accountable to the beneficiaries for the proceeds or value of the property or benefit."

Effective June 1, 1982, the first portion of this section was amended to read as follows:

"(A) No person who is convicted of or pleads guilty to a violation of or complicity in the violation of section 2903.01, 2903.02, or 2903.03 of the Revised Code or of an existing or former law of any other state, the United States, or a foreign nation, substantially equivalent to a violation of or complicity in the violation of any of these sections shall in any way benefit by the death. All property of the decedent, and all money, insurance proceeds, or other property or benefits payable or distributable in respect of the decedent's death, shall pass or be paid or distributed as if the guilty person had predeceased the decedent."

On November 30, 1983, the claimants presented an agreed statement of facts. On December 14, 1983, the court conducted a hearing to receive any matters of fact which the parties could not stipulate which might be necessary to a decision on the issues raised in the pleadings. None were presented. Chronologically the stipulated facts show:

February 19, 1974: Henry L. Potter

and Gloria A. Potter, husband and wife, were grantees of the land foreclosed herein, "jointly for and during the term of their natural lives and upon the death of either of said Grantees, then to the survivor of them, his or her separate heirs and assigns forever, 3.01 acres of land, more or less."

May 17, 1974: Henry L. Potter and wife, Gloria, executed a $14,900 note and mortgage securing same on the instant premises. Balance of $9,873.73 due at the time of this action was satisfied with interest, by sale herein, also all taxes then due.

November 5, 1978: Gloria Potter, wife of Henry L. Potter, died from a gunshot wound.

November 5, 1978: $12,353.74 was the amount then due on the $14,900 mortgage.

November 5, 1978: Value of land (said 3.01 acres) was $5,000.

January 10, 1979: Residence on said 3.01 acres was completely destroyed by fire.

February 19, 1979: Defendant received from Grange Mutual Insurance Company $26,956.80 for damage to the residence; $13,479.44 for damage to personal property; and $1,694.33 for living expenses.

December 17, 1979: Henry L. Potter executed an Affidavit of Transfer to himself, as surviving joint tenant.

December 18, 1979: Henry L. Potter and Lucy Potter, his wife, "grant * * * to Henry L. Potter and Lucy Potter, husband and wife, for their joint lives, remainder to the survivor of them" the subject premises.

February 6, 1981: Henry Lee Potter and Lucy Potter, husband and wife, grant a mortgage to Rodney L. Arthur Co., L.P.A., to secure a $10,000 note for legal services defending Henry L. Potter against the charge that he murdered Gloria, his former wife. The mortgage was filed on February 13, 1981.

July 6, 1981: Henry L. Potter and Lucy Potter, husband and wife, grant a mortgage to Norbert L. Wyss to secure a $16,069 note for legal services defending Henry L. Potter against the charge that he murdered Gloria, his former wife.

July 13, 1981: Henry L. Potter and Lucy Potter, husband and wife, grant a mortgage to Jonas Lengacher to secure a $22,079.05 note for construction.

No payments have ever been made on the obligations secured by mortgage to Arthur, Wyss and Lengacher. Henry Lee Potter's conviction remains unreversed and he is in prison. Moreover, on April 21, 1983, an affidavit of fact, which no party has contradicted, was filed by Lucy Potter reading:

"My name is Lucy Potter, I am presently married to Henry Potter, I married him after Gloria's death, but before he was indicted for murder. From my prospective inheritance my family gave me money, $13,000.00, of which I put directly into the home and building a basement, approximately $2,000.00 I needed for dirt around the house itself. In addition to that, we used my funds to put a lot of concrete in for a patio at that house. The concrete for the patio was a minimum of $1,000.00 and could have been as much as $3,000. In addition, my brothers and myself, along with Henry, did the finishing work on the basement itself.

"The insurance money from the fire was used to put back into the house, in addition to that, Henry took out a second mortgage which I paid off myself, from money from my parents."

In this factual context the court concludes it is required to determine what the statutory language in effect on November 5, 1978 means when it states:

"* * * All property of the decedent, and all money, insurance proceeds, or other property or benefits payable or distributable in respect of the decedent's death, shall pass or be paid or distributed as if the guilty person had predeceased the decedent."

Indubitably, if Henry Potter had

died of natural causes on November 5, 1978, leaving Gloria surviving, she would have acquired full title to the house and lot as a joint tenant with the right of survivorship, subject to the mortgage obligation of $12,353.74 plus interest as therein provided; and such rights as are provided by provisions of the Probate Code. Such portion of the murderer's "as if" net estate remaining after payment of debts and costs of administration would devolve pursuant to the Statute of Descent and Distribution.

But Henry Potter continued to live after purposely causing Gloria's death on November 5, 1978, a fact not disclosed until some two years later.

Prior to said disclosure and Henry Potter's indictment for Gloria's murder on October 17, 1980, these events intervened:

The Potter house situated on the mentioned 3.01 acre tract was completely destroyed by fire on January 10, 1979 while insured. Policy proceeds were then paid to Henry Potter on February 19, 1979 (which would have been paid to Gloria Potter had she been living and Henry had been deceased) as follows:

| | |
|---|---|
| For loss of house | $26,956.80 |
| For loss of personal property | 13,479.44 |
| For living expenses | 1,694.33 |
| | $42,130.57 |
| Subtracting the mortgage obligation of | $12,353.74 |
| Would leave for intestate disposition | $29,776.83 |

The testimony given in Henry's trial by Lucy Lengacher, his present spouse, that she first met him in January 1979 and married him June 29, 1979, has never been contradicted. Consequently, no suspicion can be raised that she had any complicity in the acts of Henry Potter causing Gloria's death. From her uncontradicted statement the court concludes that she, as an innocent person without notice, contributed $13,000 to the reconstruction of the burned house, the sale of which provided the funds now in the custody of the court.

Moreover, although not clearly set out in the agreed statement, it is apparent that Jonas Lengacher, a relative of Lucy, provided $22,079.05 in construction values toward the building of the new house erected subsequent to the fire. For this, Henry and Lucy gave him the mortgage dated July 13, 1981. From these facts the court infers that the house and land sold at the foreclosure sale in this action for $22,000 (appraised at $33,000) on May 27, 1983 was the result of investment as follows:

| | |
|---|---|
| Value of the 3.01 acres on 11/5/78 | $ 5,000.00 |
| Fire insurance proceeds for the house that burned | 26,956.80 |
| Money supplied by Lucy Potter | 13,000.00 |
| Value supplied by Jonas Lengacher | 22,079.05 |
| | $67,035.85 |

It is clear that this action in foreclosure was based upon the mortgage executed by Henry and Gloria on April 13, 1974 in respect to the land and original house in the principal sum of $14,900 and of which there remained unpaid at Gloria's death a principal balance of $12,353.74, which was not paid by insurance proceeds. It is also apparent that subsequent to Henry's conviction on July 14, 1981 and prior to the foreclosure sale this second house was permitted to fall into a state of serious disrepair.

On the day of sale the deed records show Henry and Lucy as tenants by the entireties of the land sold by reason of the deed executed and delivered on December 18, 1979 by Henry (as sole owner of record) and Lucy (his then wife) to themselves "husband and wife, for their joint lives, remainder to the survivor of them," being created with appropriate language pursuant to R.C. 5302.17, effective November 23, 1973,

and retroactive to any appropriate transaction occurring on or after February 9, 1972. This Act made possible for the first time in Ohio the creation of this common-law estate in land. See *Central Natl. Bank of Cleveland* v. *Fitzwilliam* (1984), 12 Ohio St.3d 51.

In Pennsylvania where this common-law estate has long been recognized, it has been said, "[w]hile a tenancy by entireties resembles a common law joint tenancy in that each spouse owns the whole and therefore is entitled to enjoyment of the entirety and to survivorship, it differs in that neither one has any individual portion which can be alienated or separated, or which can be reached by the creditors of either spouse." *Madden* v. *Gosztonyi Savings & Trust Co.* (1938), 331 Pa. 476, 481, 200 A. 624.

The creation of the estate by the entireties in 1979 in Henry and Lucy could not, of course, affect plaintiff's rights in its prior 1974 mortgage, even though as to other persons and general creditors legal consequences might possibly be greatly affected. As, however, both Henry and Lucy voluntarily participated in the execution of the mortgages dated February 6, 1981, July 6, 1981 and July 13, 1981, their estate by the entireties was, by themselves acting together, impaired to the extent of their joint and several mortgage obligations.

Still, this court concludes that when Henry murdered Gloria all property he received by inheritance or operation of law as a result of Gloria's death was subject to all the claims the decedent would have had had she survived her killer, regardless of when it is determined that he was the wrongful cause of her death by reason of R.C. 2105.19. No doubt, the rights of innocent persons acting without notice, if any, need to be respected.

Furthermore, all property of a victim of murder which is acquired by the killer by reason of inheritance, bequest, devise or the operation of law can surely, by reason of subsection (B) of this statute, now be impressed with a constructive trust in the hands of the malefactor for the benefit of all next of kin other than himself, as was the contention of Judge Williams, in dissent, in *Oleff* v. *Hodapp* (1935), 129 Ohio St. 432 [2 O.O. 409]. The decision in that case which held that a nephew who murdered his uncle could nevertheless acquire the whole of a joint bank account because "there is no statutory law in Ohio that deprives Tego of his right ot this account" (*id.* at 438) may confidently be asserted as causing the Ohio Legislature to enact in 1975 subsection (B) of R.C. 2105.19. See, also, Vanneman, The Constructive Trust; A Neglected Remedy in Ohio (1936), 3 Ohio St. L.J. 1, at 18-28. On March 2 of this year the Court of Appeals for Cuyahoga County made a ruling regarding this constructive trust effect, see *Huff* v. *Union Fidelity Life Ins. Co.* (1984), 14 Ohio App. 3d 135, and it is clear that this equitable rule based only on the murderer's conduct as effecting a transfer of value to him (had his victim died of natural causes) works no constitutionally forbidden attaint or corruption of blood.

No issue has been made in respect to exactly what personalty Gloria would have received from Henry had he died intestate the day before she did, so this court will presume that all the $13,479.44 received for destruction of personalty by fire would have been a part of his estate, even though it seems likely Henry may have also owned a vehicle or two in addition to the burned personal property. In respect to the "living expenses" paid as a result of the fire, it is certain they would have been paid to Gloria had she survived Henry on November 5, 1978 and been living at the time of the fire which occurred on January 10, 1979, so the court will include them in the estate for distribution "as if" Gloria had survived Henry, even if they amount to only $1,694.33.

Viewing now the contribution to the property sold in this foreclosure we can see a pre-sale investment attributable, percentage-wise, to the following:

| | |
|---|---|
| Value of the 3.01 acres to which Gloria is entitled $5,000 or | 7.458 percent |
| Value of the house insurance proceeds $26,956.80 or | 40.212 percent |
| Lucy's inheritance $13,000 or | 19.393 percent |
| Lengacher's contribution $22,079.05 or | 32.937 percent |
| | 100.00 percent. |

There is no indication that the personal property fire insurance proceeds of $13,479.44 or the living expenses of $1,694.33 paid in connection therewith were ever invested in this property. One solution to the problem before the court would be to adjudge distribution of the present fund:

| | |
|---|---|
| To Gloria's heirs equally 47.670 percent thereof or | $3,638.23 |
| To Lucy Potter 19.393 percent thereof or | 1,480.09 |
| To Jonas Lengacher 32.937 percent thereof or | 2,513.79 |
| | $7,632.11 |

Upon reflection, however, this court reaches the conclusion that as Gloria's contribution of her "as if" estate was prior in time, a salutary interpretation of R.C. 2105.19 and a proper application of the constructive trust doctrine based upon the principle that equity treats as done that which should have been done will treat Gloria's "as if" contribution—at least until completely exhausted—as prior in time to any later contributions made by others, even innocent persons acting without knowledge.

Assuming then a net estate of $29,776.83 from the fire insurance proceeds plus the $5,000 in land value for distribution to Gloria on November 5, 1978 "as if" she had survived Henry, we look to the Statute of Descent and Distribution and other provisions of the Revised Code to see what she was entitled to receive to pass on to her heirs. Obviously, had Henry died November 4, 1978 he would have left as next of kin: Gloria, his surviving spouse; and Henrietta and Michael Potter, their children. But, on November 5, 1978 Gloria died and left Henry, her surviving spouse; Henrietta and Michael, their children; and Roy DeWayne Watts and Phyllis Watts, her children by a former husband.

So, eliminating Henry "as if" he had predeceased Gloria, all of her "as if" net estate now descends to her four children: Henrietta Potter, a minor; Michael Potter, a minor; Phyllis Watts, an adult, and Roy DeWayne Watts, an adult, as Gloria's heirs entitled to take all the estate she would have had had she survived Henry.

But we must first determine what she was entitled to receive had she for one day survived Henry. We find that R.C. 2105.06 provides, *inter alia*:

"When a person dies intestate having title or right to any personal property, or to any real estate or inheritance in this state, the personal property shall be distributed, and the real estate or inheritance shall descend and pass in parcenary, except as otherwise provided by law, in the following course:

"* * *

"(C) If there is a spouse and more than one child or their lineal descendants surviving, the first thirty thousand dollars, if the spouse is the natural or adoptive parent of one of the children, or the first ten thousand dollars if the spouse is the natural or

adoptive parent of none of the children, plus one-third of the balance of the intestate estate to the spouse and the remainder to the children equally, or to the lineal descendants of any deceased child, per stirpes; * * *''

These provisions would, of course, follow after prior satisfaction of the rights of the surviving spouse provided by: R.C. 2105.062, election to receive mansion house; R.C. 2113.532, transfer of automobile title; and R.C. 2117.20, surviving spouse or children to receive allowance.

Although, as mentioned previously, Henry may have owned some other property at the time Gloria died, the court considers only that described in the stipulation and pleadings for the purpose of this decision and so, obviously, R.C. 2113.532 can have no application here as no automobile is involved.

The court need not consider the right of a surviving spouse to elect to receive the mansion house under R.C. 2105.062 as decedent never had opportunity to make any election.

R.C. 2117.20 provides that a surviving spouse is "entitled to receive in money or property the sum of five thousand dollars as an allowance for support. The money or property set off as an allowance shall be considered estate assets." Further it has been held that "[t]he value of the statutory allowance under R.C. 2117.20 shall be deducted from the gross estate prior to computing a surviving spouse's interest under R.C. 2105.06." *In re Green* (1980), 63 Ohio Misc. 44 [17 O.O.3d 388], paragraph four of the syllabus. Consequently, the court finds Gloria entitled to receive all the "as if" estate of $34,776.83, even though in fact such amount would be reduced by costs of administration and perhaps estate tax, recognizing that property received as a survivor is not technically part of the decedent's estate. Such property does, nevertheless, descend as that acquired by purchase. Con-sequently, upon Gloria's death, her "as if" estate would pass equally to all four of her children, to wit: Phyllis Watts, Roy DeWayne Watts, Henrietta Potter and Michael Potter. As beneficiaries of a constructive trust for their benefit arising by reason of Henry's act of murder, this court finds each of Gloria's four children entitled to receive a one-quarter share of the fund now in the hands of the court.

Finding then that at least until all contribution to the res sold here, flowing from that to which Gloria was entitled, is restored to her heirs, subsequent contributors may lay no claim to it. The court finds that this fund should be distributed as follows:

| | |
|---|---|
| To Phyllis Watts 25 percent or | $1,908.02 |
| To Roy DeWayne Watts 25 percent or | 1,908.03 |
| To Henrietta Potter 25 percent or | 1,908.03 |
| To Michael Potter 25 percent or | 1,908.03 |
| Total | $7,632.11 |

The costs incurred herein by reason of the foreclosure sale in the total amount of $590.04 have, of course, been paid. The clerk of courts informs the court that with the filing of the entry pursuant to this decision the increased costs will amount to $68.

In conclusion, the court finds:

(1) That Henry Potter had no interest in the premises sold here by reason of both R.C. 2105.19 and the equitable rule making him, by operation of law, trustee of all that property acquired by reason of Gloria's death for the benefit of her heirs other than himself.

(2) That the tenancy by the entireties created by the deed dated December 18, 1979 was ineffective for any purpose here, being subject to the prior mortgages foreclosed in this action and the encumbrances the holders of

this purported estate jointly and severally executed to others.

(3) That the mortgages executed on February 6, 1981 to Rodney M. Arthur Co., L.P.A., and on July 6, 1981 to Norbert L. Wyss, Esquire, by Henry and Lucy Potter were defeatable upon Henry's conviction for murder. The mortgages were executed for attorney fees earned in defending Henry in respect to his indictment for Gloria's murder of which he was later convicted following two trials. This conviction remains unreversed, and counsel must be presumed to have had knowledge of R.C. 2105.19 and the constructive trust doctrine at the time they were executed, and that their effectiveness would be contingent upon Henry Potter being found to be not responsible for the murder or wrongful death of Gloria.

Presumably the property sold, arising from the value of the property held constructively in trust by Henry L. Potter plus value contributed by others later, was sold for a figure substantially less than its investment base so that no gain taxable to each of these beneficiaries was realized. Therefore, the court suggests that counsel for the children advise their clients as to the tax consequences, if any, in respect to such money as they receive by virtue of the court's decision here.

*Judgment accordingly.*