**In re Mark V. BASHER, Debtor.**

**Mark V. Basher, Plaintiff,**

**v.**

**United States of America, Dept. of the Treasury, Internal Revenue Service, Defendant.**

**Bankruptcy No. 02–12328DWS.
Adversary No. 02–0346.**

United States Bankruptcy Court,
E.D. Pennsylvania.

March 28, 2003.

**358**

Michael Kaliner, Esquire, Fairless Hills, PA, for Plaintiff.

Jennifer L. Best, Esquire, U.S. Department of Justice, Washington, DC, for Defendant.

Edward Sparkman, Esquire, Philadelphia, PA, Chapter 13 Trustee.

Dave P. Adams, Esquire, Office of the U.S. Trustee, Philadelphia, PA, United States Trustee.

### OPINION

DIANE WEISS SIGMUND,
Bankruptcy Judge.

Before the Court is the Complaint of the debtor Mark V. Basher ("Debtor") to determine secured status of the claim of the Internal Revenue Service ("IRS") pursuant to 11 U.S.C. § 506(a). Debtor seeks to reduce the secured portion of the IRS' claim based on the values he attributes to the properties to which the IRS' lien attaches in furtherance of "cram down" of the IRS under his Chapter 13 plan.[1] On

---

1. The Debtor initially sought to reduce the IRS' secured claim from $285,371.71 to $21,107 but as explained in *Basher I*, amended the requested reduction to $46,107. It is the Debtor's intention to avail himself of § 1325(a)(5)(B) to retain his interest in the Residence by paying the IRS the allowed amount of its secured claim. The proof of claim filed by the IRS, Exhibit G–1, is designated secured in the amount of $285,371.71. However, the IRS acknowledges that there is not sufficient property to which its lien attaches to reach that value. Its position is that it is entitled to a secured claim consisting of

December 3, 2002 I entered an Order and Memorandum Opinion, 2002 WL 31856712 (Bankr.E.D.Pa. Dec.3, 2002) ("*Basher I*") deciding certain of the issues raised by the Complaint[2] but concluding that I had not had the benefit of a clear exposition of the parties' respective views on the valuation of the Debtor's tenant by entirety interest in real property located at 70 Forrest Drive, Holland, Pennsylvania (the "Residence"). Accordingly, I requested and have now received, legal memoranda that set forth each litigant's position with respect to this issue. Rather than restate the factual findings set forth in *Basher I*, I shall incorporate that Opinion as though set forth herein. I thus turn directly to the legal issue left unresolved in Basher I.

**DISCUSSION**

**I.**

Acknowledging the decision of the United States Supreme Court in *United States v. Craft*, 535 U.S. 274, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002), the Debtor concedes that the IRS' lien attaches to his interest in the Residence notwithstanding the fact that he holds it as a tenant by the entirety with his wife Marcella and that she has no obligation with respect to the judgment giving rise to the lien. The dispute that is the focus of this Opinion is how to value that interest, a subject not addressed in *Craft*. According to the Debtor's analysis, the interest should be valued at zero. The IRS urges the Court to value the interest at 50% of the equity in the Residence if I conclude, as I did in *Basher I*, that the Debtor's transfer of an interest in the Res-

idence upon their marriage cannot be avoided. In *Basher I*, I noted my uncertainty with both of the values ascribed by the litigants. 2002 WL 31856712, at *4–5. Upon review of the post-decision memoranda and the cases cited therein, I conclude that the respective values ascribed by parties to the Residence are incorrect although the IRS comes closer to reaching the correct answer.

**II.**

The Debtor acknowledges that he has the initial burden of going forward with his case but notes that where determinations of value arise, "burdens may shift where one party produces evidence which the other seeks to refute." Plaintiff's Memorandum of Law Pursuant to the Order of December 3, 2002 at 1. He fails to state how that observation applies to the burdens of proof here. The IRS cites to the United States Supreme Court's decision in *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) which held that when the substantive law creating a tax obligation puts the burden of proof on a taxpayer, the burden of proof on the tax claim in bankruptcy remains where the substantive law placed it and is not altered by bankruptcy. It also argues that its properly filed proof of claim is entitled to be accorded *prima facie* validity and requires the objecting party to produce evidence that rebuts that presumption. It appears that both parties agree that the Debtor has the initial burden of going forward. Where the parties

$45,000 on account of the Rental Property, $1,107 attributable to personal property and $101,520.54 for the Residence. However, if I should find, and I did so conclude, *see* n. 2 *infra*, that the Residence is owned by Debtor and his wife Marcella Basher ("Marcella") as tenants by the entireties, then the value attributable to the Residence should be $50,760.27.

**2.** I determined that the IRS's lien which attached to the Debtor's Rental Property was valued at $45,000. I concluded that the Debtor owned the Residence as tenant by the entireties with Marcella, and rejected the IRS' attempt to set aside the Debtor's transfer of an interest in the Residence to her. *Id.*

disagree is whether the Debtor has sustained that burden by the evidence he presented. Finally, if Debtor does not meet his burden, I must determine whether the IRS' valuation should be accepted.

## III.

There is another significant agreement that was identified by the parties' respective legal memoranda. In evaluating their conflicting views of the record, they concur that my legal framework for this valuation decision is *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). In *Rash*, the United States Supreme Court held that the standard for valuation of a secured claim for the purpose of cram down pursuant to § 1325 of the Bankruptcy Code is replacement value. Finding the proposed disposition or use of the collateral to be of paramount importance to the valuation question, the Supreme Court noted that the valuation standard would turn on the alternative the debtor chooses—*i.e.*, surrender of the collateral or retention and use by the debtor. A foreclosure value standard was rejected as inconsistent with the retention option permitted through the cram down power.

Of prime significance, the replacement-value standard accurately gauges the debtor's "use" of the property. It values "the creditor's interest in the collateral in light of the proposed [repayment plan] reality: no foreclosure sale and economic benefit for the debtor derived

from the collateral equal to ... its [replacement] value.".

*Id.* at 1886 (*quoting In re Winthrop Old Farm Nurseries*, 50 F.3d 72, 75 (1st Cir. 1995)). Like the debtor in *Rash*, Basher elected to retain the collateral as his Residence. The evidence is that the Debtor's marriage is sound, and that Marcella is only 45 years old and the Debtor one year older. Thus, while there are restrictions on Debtor's disposition of the Residence by reason of the tenancy by entireties ownership, there is no restriction on his use and enjoyment of the property. That actual use, rather than what he could sell his interest for, is the measure of value here.

■ Debtor, however, focuses on the market value of the Debtor's interest in the Residence. His evidence consisted of the testimony of his father, a real estate broker, opining that there would be limited ability to sell Debtor's interest and a life expectancy table indicating that Marcella was likely to live another 37 years so the burden on his interest to dispose of the Residence is not soon to be ameliorated. From that evidence, he argues that the Residence has no value. Like the IRS, he refers to *Rash* to support his position, quoting a portion of a footnote that sought to reconcile its definition of replacement value with the Ninth Circuit's view as articulated in *In re Taffi*, 96 F.3d 1190 (9th Cir.1996).[3] However, the Debtor misses the point of that footnote which is intended to explain that by replacement value, the

**3.** The footnotes reads in its entirety as follows:

In *In re Taffi*, the Ninth Circuit contrasted replacement value with fair-market value and adopted the latter standard, apparently viewing the two standards as incompatible. *See* 96 F.3d at 1192. By using the term "replacement value," we do not suggest that a creditor is entitled to recover what it would cost the debtor to purchase the col-

lateral brand new. Rather, our use of the term replacement value is consistent with the Ninth Circuit's understanding of the meaning of fairmarket value; by replacement value, we mean the price a willing buyer in the debtor's trade, business, or situation would pay a willing seller to obtain property of like age and condition. *Id.*

Court does not suggest that a creditor would be allowed to recover what it would cost the debtor to purchase the collateral brand new. Rather replacement value would be "the price a willing buyer in the *debtor's ... situation* would pay a willing seller." *Id.* (emphasis added.) The Debtor's situation here is as owner of a tenancy by entireties, not a third party purchaser. Thus, even in the footnote quoted, the focus is on value from the debtor's perspective. I therefore reject Debtor's position that his interest in the Residence has no value because of the burdens on its disposition.[4]

Moreover, even without regard to *Rash*, Debtor's conclusion that there is no value to his interest in the Residence is flawed. In *United States v. Rodgers*, 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983), the United States Supreme Court held that section 7403 of the Internal Revenue Code, 26 U.S.C. § 7403,[5] gave the district court the power to order the sale of a property otherwise requiring the consent of the non-debtor spouse and to direct distribution of the proceeds to the IRS on account of its lien and to the non-debtor on account of its entirety interest.[6] In validating the power conferred upon the district court under

**4.** Debtor's reliance on *O'Hagan v. United States of America*, 86 F.3d 776 (8th Cir.1996) does not suggest a contrary conclusion. The portion of the opinion quoted merely demonstrates the Court's recognition that "it is highly unlikely that fully informed third party purchaser would buy such a limited right" (*i.e.*, joint tenancy with right of survivorship). *Id.* at 784. I do not dispute this proposition which was also supported by the testimony of Walter Basher Sr. However, under *Rash* the value of property retained by a debtor under the Code granted right of cram down is to be determined by its value to the debtor and not to a hypothetical third party purchaser.

**5.** § 7403. Action to enforce lien or to subject property to payment of tax

(a) Filing.—In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability. For purposes of the preceding sentence, any acceleration of payment under section 6166(g) shall be treated as a neglect to pay tax.

(b) Parties.—All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto.

(c) Adjudication and decree.—The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States. If the property is sold to satisfy a first lien held by the United States, the United States may bid at the sale such sum, not exceeding the amount of such lien with expenses of sale, as the Secretary directs.

**6.** *Rodgers* involved Texas homestead law that provides that each spouse has a separate and undivided interest in the homestead only lost by death or divorce and which may not be compromised by one spouse. The Rogers' reasoning and holding is equally applicable to property held as tenants by entireties. *United States v. Davenport*, 106 F.3d 1333 (7th Cir. 1997).

The power conferred on the court to order a forced sale is discretionary although that "discretion should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *Rodgers*, 461 U.S. at 711, 103 S.Ct. at 2152. It is therefore the taxpayers' burden to prove that the factors identified in *Rodgers* as a basis to refuse the sale were present. *Davenport*, 106 F.3d at 1338.

§ 7403, the Supreme Court observed that "it made considerable sense to allow the Government to seek the sale of the whole and obtain its fair share of the proceeds, rather than satisfy itself with a mere sale of the part," recognizing that "interests in property, when sold separately, may be worth significantly ... less than the sum of their parts." *Id.* at 694, 103 S.Ct. at 2143.[7] Thus, at least as to this creditor, admittedly one with unique and special federal statutory rights, the value upon sale would not be zero as the Debtor contends because the IRS has the ability to seek a forced sale and would be likely to realize the actual market value of the Residence. The Debtor's interest to which the lien is attached would yield some percentage of the net proceeds to be determined by the Court giving full consideration to the property rights of the non-debtor.

## IV.

■ Having concluded that the Debtor has not sustained his burden of establishing a zero value on the Debtor's interest in the Residence, I must determine if any other value is supported by this record. The IRS contends that I should accord 50% of the equity in the residence to the Debtor's tenancy by entireties interest. The parties agree that the Residence had a fair market value as of the petition date of $250,000. Stipulation of Facts ¶ 3. There is a mortgage on the Residence,

Exhibit G–4,[8] which had an outstanding balance as of December 31, 2001 of $148,479.45. Exhibit G–5. With an equity of $101,520.55, the IRS claims that a value of $50,720.27 should be attributed to its secured claim with respect to the Residence.

The IRS's position finds support in *In re Hermann*, 224 B.R. 101 (Bankr.D.Minn. 1998), which valued the debtor-wife's joint tenancy interest in the couple's homestead at 50% of the total equity for "cramdown" purposes. Citing *Rash*, the court stated that the measure of value of property retained in the exercise of the Chapter 13 "cram down" option is the cost the debtor would incur to obtain a like asset for the same proposed use. The *Rash* parties had taken the same positions taken by the litigants here, *i.e.*, the debtors argued there was no (or at least the IRS had proven no) value, and the IRS contended the interest should be valued at 50% of the equity in the property. Under Minnesota law applicable in *Hermann* (and also under Pennsylvania law applicable here), the court identified the interest as one of possession with right of survivorship because the debtor did not have the right to unilaterally sever the other joint tenant's interest. Relying on *O'Hagan*, 86 F.3d 776, as does the Debtor here, the debtor had argued that there was no market value to the survivorship interest. The *Hermann*

---

7. While it was not necessary for the Court to determine the distribution method required by § 7403, and it so noted, it nonetheless in dictum set forth a "rough idea of the practical consequences of its decision" by illustrating hypothetical distributions in the context of a valuation of a life estate. The Court's calculus drew upon actuarial mortality tables. *Rodgers*, 461 U.S. at 698, 103 S.Ct. at 2145. Significantly, it noted that while the provisions of § 7403 are broad, " § 7403 is punctilious in protecting the vested rights of third parties caught in the Government's collection effort, and in ensuring that the Government

not receive out of the proceeds of sale any more than that to which it is properly entitled." *Id.* at 699, 103 S.Ct. at 2145.

8. The mortgage produced is in favor of Greater Delaware Valley Savings Bank while the loan obligation is in favor of Alliance Bank. The evidence does not establish the chain of ownership of the mortgage but it is not disputed that there is one, and the mortgage balance statement was admitted without objection.

court acknowledged the accuracy of the *O'Hagan* court's analysis of the value of joint tenancy interests *to third parties*[9] but found, as I have, that it has no relevance to a § 506(a) cram down valuation of a secured claim. Quoting to the same language in *Rash* as I did above, the court stated that the uniqueness of the debtor's interest and its irreplaceable nature enhance its value to her rather than detract from it. The court concluded that one half the value of the total equity in the property is *"prima facie* proof of the replacement cost of debtor's interest in the joint tenancy homestead interest to her, in valuation of the IRS's secured claim under § 506(a) upon her election to retain the property." *Id.* at 104. The debtor's evidence had demonstrated lack of value to others, not replacement cost to her. Accordingly, the court found that the debtor had not rebutted the *prima facie* proof offered by the IRS and accepted the IRS's 50% valuation.

The IRS also cites one other case on point in support of its position but interestingly it does not reach the precise conclusion that the IRS would have me adopt here.[10] In *Pletz v. United States of America (In re Pletz)*, 221 F.3d 1114 (9th Cir. 2000), the Ninth Circuit Court of Appeals held, under Oregon law,[11] that the IRS held a lien on the Debtor's interest as a tenant by entirety in property owned with his wife and the value of the interest was to be determined by reference to joint-life actuarial tables. To fully understand the *Pletz* decision, it is necessary to begin with the decision of the bankruptcy court which had rejected each party's valuation of the debtor's interest. Like the Debtor here, the debtor placed a *de minimus* value ($12,000 of $266,800 total) on the interest contending that it had no value in the open market. The court disagreed based on Oregon lien law which allows alienation of the property. However, that disagreement did not require acceptance of the IRS's contention that given its right to sell the property subject to its lien pursuant to § 7403 of the Internal Revenue Code, each spouse's interest is 50% of the sale price. 225 B.R. at 209. Rather the bankruptcy court concluded that the value of the debtor's interest could only be fixed after determining the value of the non-debtor spouse's interest which would have to be compensated in any sale and would be based on the life expectancy of the debtor and his spouse. Rejecting the debtor's value ($12,000) as unsupported and stating

9. *O'Hagan* involved an attempted tax lien foreclosure of the homestead.

10. The only other § 506 decision my research uncovered on the valuation of a tenancy by entireties post-*Craft* was in *In re Ryan*, 282 B.R. 742 (Bankr.D.R.I.2002), a chapter 7 case. In *Ryan*, the Court adopted a 100% value, reasoning that tenants by entireties do not own separate shares but rather have a single ownership, *i.e.,* "they do not take by moieties, but both and each take the whole estate." While that may be an accurate statement of property law, 282 B.R. at 749, it leads to a peculiar result. Aggregating the two spousal interests would require a valuation of the total equal to double its actual value. For the same reason, I find the Debtor's zero value illogical. Aggregating the two spousal

interests under Debtor's theory would yield a property without any value. In any event, *Ryan* is a Chapter 7 case which would not implicate application of the *Rash* replacement value test in a cramdown context.

11. Unlike Pennsylvania law, Oregon law allows a creditor of one spouse to fix a lien on that spouse's interest in property held as tenants by the entirety. *In re Pletz*, 225 B.R. 206, 208 & n. 3 (Bankr.D.Or.1997). Thus, while *Craft* has recently enunciated the unique reach of a tax lien on entireties property held in states where creditors cannot otherwise encumber such property, guidance on valuing liens on property held as tenants by entireties is available from states such as Oregon where such liens are expressly permitted by state law.

that the IRS had not submitted any evidence of value, the court continued the matter and gave the parties an opportunity to provide that evidence. *Id.* at 210. The ultimate bankruptcy court decision on valuation was not reported [12] but the Ninth Circuit opinion, which further affirms the bankruptcy judge, gives some insight into the final outcome. Agreeing with the IRS, the Court found that actuarial tables that reflect the joint interests of both spouses, rather than those that value the wife's interest as though she possessed a single life estate, were the appropriate measure of their respective interests. 221 F.3d at 1117–18.[13] Based on the joint-life method and correcting for the difference in anticipated life span, the court found that the wife had a 53.207% interest in the property and the husband a 46.793% interest. *Id.* at 1116.

The Debtor's interest in the Residence consists of his right to use the Property, the right to exclude persons from it, and the right to sell it with Marcella's consent and receive half the proceeds from such a sale. *Craft,* 535 U.S. at 282, 122 S.Ct. at 1422. As to these rights, the Debtor's interest is equal to that of Marcella. The Debtor has one additional right in the Residence and that is his right of survivorship. *Id.* The IRS makes no adjustment to the 50–50% allocation by reason of the value of Debtor's right of survivorship versus that of Marcella. In this case, the Debtor is 46 years old while his wife is 45 years. Life expectancy in 2000 for a male age 46 was 31.3 years as compared to 37.3 years for females. United States Life Tables, 2000, National Vital Statistics Report, vol. 51, number 3 at 9, 11 (December 19, 2002).[14] As Marcella is one year younger than Debtor and has an additional six year life span, it follows that her survivorship interest in the Residence should have greater value than the Debtor's survivorship interest. If so, an equal allocation of the equity in the Residence would overstate the IRS' claim although not seemingly in a significant amount. *See Pletz,* 221 F.3d at 1116 (husband, age 47 had a 46.793% interest and wife, age 46 had a 53.207% interest); *United States v. Johnson,* 943 F.Supp. 1331 (D.Kan.1996) (husband, age 69 had 48.809% interest; wife, age 68 had 51.191% interest).[15] However, I am unable on this record to determine the appropriate adjustment to the IRS' valuation based on this factor.[16]

12. The decision was appealed and was affirmed first by the district court in a case reported at 234 B.R. 800 (D.Or.1998). Although short on analysis, the court does note that both parties produced experts whose opinions were each given limited weight. *Id.* at 801.

13. Under a single life analysis which the court rejected, the wife would be deemed to have all the possessory interest in the property while the parties were alive and the debtor's sole interest would be a right of survivorship. Because the debtor is still alive and has an undivided right to the property and a right if survivorship, this approach was not correct. *Id.* In maintaining that his interest in the Residence is the sale value of his survivorship interest, Debtor's argument here was similarly flawed. It simply ignored his unlimited right of use and enjoyment of the Residence.

14. I take judicial notice of this public report pursuant to Fed.R.Evid. 201.

15. The Bashers at age 46 and 45 are very close in age to the Pletz couple. Applying the percentages found in *Pletz* in this case to determine the Debtor's interest in the Residence yields a value of $47,511,61 ($110,-520.55 × 46.8%), only $3,208.66 less than the $50,720.27 urged by the IRS based on a 50% allocation.

16. The IRS, although a party to the *Pletz* case and citing it approvingly here, has not attempted to apply its analysis, indeed not even noting that the court rejected the 50% allocation. The Debtor, who had the opportunity to reply to the IRS' memorandum citing *Pletz,* likewise did not comment on the reasoning of *Pletz* which would, if not reduce the value to

Often with an inconclusive record, the ultimate outcome is resolved by the applicable burdens of proof. I have found that the Debtor has not met his initial burden of production. Other than contend the Debtor's interest has no value because it cannot be sold on the open market, he has not challenged the IRS' valuation. The IRS appears to conclude that the failure of Debtor's proof requires that I enter an order accepting the valuation it has placed on the Residence in its memoranda and argument. The cases it cites do not get me there. As noted above, *Raleigh v. Illinois Department of Revenue, supra,* stands for the proposition that the burden of proof remains where the substantive law has placed it. In that case, state law regarding use tax stated that a notice issued by the department was *prima facie* evidence of liability. As such, the traditional burdens of proof in claim litigation that place the ultimate burden on the creditor were not to be applied. The taxing authority needs to prove nothing and its notice of liability will be sustained unless the taxpayer meets the burden of production and persuasion.

In the instant case, the IRS proof of claim, *see* exhibit G-6, states the secured claim in the full amount of the tax obligation, *i.e.,* $285,371.71, without regard to the collateral. In the space to designate value of collateral, it supplies a general reference to "all of debtor(s) right, title and interest to property–26 U.S.C. § 6321." There is no valuation of the ac-

tual collateral. Accepting the IRS valuation based on debtor's failure to meet its burden would be according *prima facie* validity to an argument made in defense of the instant Complaint.[17] Refusing to do so in my view is not inconsistent with the Supreme Court's teaching in *Raleigh* because there is no non-bankruptcy substantive law that is establishing a tax obligation here. The tax obligation is the entire claim which is not in dispute. At issue is the secured portion of the claim for the purpose of cram down in a Chapter 13 plan, a uniquely bankruptcy concept. The Court's concern that bankruptcy not alter non-bankruptcy entitlements of a tax creditor is not implicated since absent bankruptcy the bifurcation issue simply would not arise. Thus, none of the concerns present in *Raleigh* are present here. In short, I find that absent a basis for its valuation calculation, I need not accept IRS' number merely because the Debtor failed to meet its burden.

Moreover in evaluating what the IRS's rights are in a non-bankruptcy context to ensure that they are not put to a higher proof here, I turn to the closest proceeding to the bifurcation sought here, namely a § 7403 proceeding where the court may be required to value the respective interests in entireties property because the nonliable spouse must be compensated for its forced sale. In *Harris v. United States,* 764 F.2d 1126, 1130 (5th Cir.1985), the court explained that the use of Treasury

---

zero, at least reduce it below 50%. And unlike the record made in *Pletz* where each party produced experts, I have no such assistance in refining my judgment as to the value of the Debtor's interest in the Residence.

17. Notably the Debtor does not object to the correctness of the IRS' claim amount but rather the value of the collateral securing it. Neither party focused on whether this makes a difference. In *In re Fareed,* 262 B.R. 761

(Bankr.N.D.Ill.2001), the court noted that the claims allowance process is distinct from the process of valuing collateral for the purpose of determining a claim's secured or unsecured status. However, because the confirmed plan adopted the creditor's collateral value, the debtor was not permitted to request bifurcation under § 506, and the Court did not have to apply the burdens of proof under § 506.

tables in determining these interests has been long recognized by the United States Supreme Court and affirmed the application of joint-life tables where more than one person has an interest in the estate. Had the IRS only produced its own actuarial tables to calculate the valuation here, the failure of the Debtor to refute it would have been conclusive. *United States v. Baran,* 996 F.2d 25, 27 (2d Cir.1993) (district court acted within discretion in accepting IRS valuation method where Defendants made no claim that standard IRS table for valuation overstated interest). *See also United States v. Johnson,* 943 F.Supp. at 1335. In *Johnson,* the court found that while the IRS had valued the nonliable spouse's homestead interest at 51.191%, it still had not demonstrated that she would be properly compensated. The IRS had offered no evidence regarding the appraised value or projected selling price of the property, the cost of the life estate in a comparable residence or what share of the proceeds would be sufficient to purchase such an estate. *Id.* Thus, it appears that the IRS has some burden to establish the nondebtor's interest without regard to the quality of the owners' proof.

In short, by requiring the IRS to support its valuation by competent evidence, the burden of proof under non-bankruptcy law has not been altered. To accept the IRS's value on the Debtor's interest at 50% would be to reduce the burden it has in a § 7403 hearing. Thus, even though the parties agree that it was the Debtor's burden to go forward to establish the amount of the secured claim, its failure to meet that burden cannot in this case by default require acceptance of the IRS' position.

## V.

Thus, once again I reach the conclusion of my analysis unable to completely adjudicate the pending matter. However, to assist the parties, with the hope that this decision and *Basher I* may offer a roadmap to resolving the entire dispute, I will summarize what I have decided. The collateral securing the IRS claim consists of three components: the Rental Property which I have valued at $45,000, the personal property which the Debtor has a value of $1,107 and the Residence to which a value has not been ascribed. In fixing value on the Debtor's interest in the Residence, I have rejected the Debtor's theory that it is to be based on the value to be obtained for a survivorship interest in the open market. However, neither do I accept the IRS' valuation at 50% of equity in the Residence as it does not appear to give any consideration to the impact of the lesser value of Debtor's survivorship interest *vis a vis* Marcella.

A consolidated hearing on confirmation of Debtor's Chapter 13 plan (the "Plan") and the Chapter 13 trustee's motion to dismiss is scheduled for April 10, 2003. As the Plan provides that the IRS's secured claim shall be determined pursuant to § 506(a) and it has not, presumably the Chapter 13 trustee shall be unable to recommend confirmation, and absent agreement by the parties or further evidence at the confirmation hearing, the Plan cannot be confirmed. Moreover, I note that the Plan provides for the payment of the IRS' secured claim over the life of the plan. The Plan provides for 60 payments of $354 per month which utilizes all of the Debtor's disposable income. Schedule I and J.[18] As this amount only aggregates $21,240, it appears that the plan is insufficiently fund-

---

**18.** I take judicial notice of the Chapter 13 plan and Schedules filed in this case. While a court may not take judicial notice *sua sponte* of facts contained in the debtor's file that are disputed, *In re Aughenbaugh,* 125 F.2d 887 (3d Cir.1942), it may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is

ed to pay the IRS claim without regard to the Residence. Thus, the determination of the precise valuation number for the Residence may be irrelevant in the final analysis to the disposition of this Chapter 13 case. In such event, the Chapter 13 trustee who has adjourned his motion pending the adjudication of this adversary case has no basis to do so any longer. These matters shall be addressed at the aforementioned hearing on April 10, at which I expect the Debtor, the IRS and the Chapter 13 trustee to present such evidence as may be necessary to determine the matters still pending, *i.e.*, confirmation and the motion to dismiss.

An Order consistent with this Opinion shall enter.

not unfair to a party to do so and does not undermine the trial court's factfinding authority." *In re Indian Palms Assoc.,* 61 F.3d 197, 205 (3d Cir.1995) (*citing* Fed.R.Evid. 201(f) advisory committee note (1972 proposed rules)). Moreover, "factual assertions in pleadings, which have not been superceded by amended pleadings, are judicial admissions against the party that made them." *Larson v. Groos Bank,* 204 B.R. 500, 502 (W.D.Tex.1996) (statements in schedules). *See also In re Musgrove,* 187 B.R. 808 (Bankr. N.D.Ga.1995) (same); *In re Leonard,* 151 B.R. 639 (Bankr.N.D.N.Y.1992) (same).