**Howard D. and Sheila A. POPKY**

v.

**UNITED STATES OF AMERICA**

No. Civ.A. 03–1487.

United States District Court, E.D. Pennsylvania.

June 15, 2004.

John R. Crayton, Crayton & Belknap, Bensalem, PA, for Plaintiffs.

Pat S. Genis, U.S. Attorney's Office, U.S. Dept of Justice, Washington, DC, for Defendant.

### *MEMORANDUM*

O'NEILL, District Judge.

## I. INTRODUCTION

Plaintiffs Howard D. and Sheila A. Popky seek to quiet title to proceeds from the

sale of a property held in a tenancy by the entireties. Plaintiffs also seek a refund of the proceeds that the Internal Revenue Service collected by levy and applied to satisfy the trust fund tax liabilities of Sheila A. Popky in the amount of $43,324.43. Defendant United States seeks a judgment against Sheila Popky for the balance of the unpaid trust fund taxes. Now before me are the parties' cross-motions for summary judgment. For the reasons set forth below, I will grant defendant's motion and will deny plaintiffs' motion.

## II. BACKGROUND

On November 23, 1998, a delegate of the Secretary of the Treasury of the United States assessed $42,799.20 in taxes against Sheila A. Popky under 26 U.S.C. Section 6672. This amount represented unpaid employment taxes which should have been withheld from the wages of employees of Sheila's EMS, Inc. during the tax period from December 31, 1995 through December 31, 1996. When the taxes were not paid, a notice of federal tax lien was filed in Montgomery County, Pennsylvania on September 11, 2002.

In December, 2002, plaintiffs sold a property which they held as tenants by the entireties at 816 Margo Lane, Narberth Pennsylvania for $475,000. The title company held in escrow the net proceeds from the sale of $48,000 along with $12,000 in excess deposit money paid by the purchasers and $26,649 in cash paid to the plaintiffs at closing.

The IRS wrote the purchasers of the property on February 28, 2003 to inform them that there was a federal tax lien attached to the property. The title company subsequently sent the IRS a check in the amount of $42,324.43. The IRS applied this amount to Sheila Popky's trust fund tax liability and alleges that a balance of $15,814.47 remained due and owing as of July 7, 2003, with statutory additions accruing thereon.

## III. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The Supreme Court has recognized that the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions ... which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party has filed a properly supported motion, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party may not rest upon the mere allegations or denials of the party's pleading. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

I must determine whether any genuine issue of material fact exists. An issue is "material" only if the dispute over facts "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the record taken as a whole in a light most favorable to the nonmoving party, "could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted). If the evidence for the nonmoving party is merely colorable, or is not significantly

probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

## IV. DISCUSSION

■■■ At issue here is whether, under Pennsylvania law, the property held by Howard and Sheila Popky in a tenancy by the entireties [1] qualifies as property or a right to property belonging to Sheila Popky for the purposes of the tax code. The Internal Revenue Code creates a lien in favor of the United States on "all property and rights to property, whether real or personal," belonging to a person who neglects or refuses to satisfy a tax obligation after demand from the government. 26 U.S.C. § 6321. Although under Pennsylvania law, a creditor against one spouse only cannot attach a lien to property held by both spouses in a tenancy by the entireties, *see, United States v. Parcel of Real Property Known as 1500 Lincoln Avenue*, 949 F.2d 73, 75 (3d Cir.1991), this prohibition does not apply where federal tax liens are concerned. *See Drye v. United States*, 528 U.S. 49, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999) (holding petitioner taxpayer's control over property brought it within the meaning of 26 U.S.C. Section 6321 and hence the property was subject to federal tax liens). State law controls when determining the nature of a taxpayer's legal interest in particular property. What consequences attach to that right are a matter of federal law.

A common idiom describes property as a "bundle of sticks"—a collection of individual rights which, in certain combinations, constitute property. State law determines only which sticks are in a person's bundle. Whether those sticks

qualify as "property" for purposes of the federal tax lien statute is a question of federal law.

*United States v. Craft*, 535 U.S. 274, 278, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002).

The Supreme Court considered the issue of whether a federal tax lien could attach to property held in a tenancy by the entireties under Michigan law in *Craft* and held that Michigan law created sufficient rights in entireties property for a debtor spouse's interest in a property held by the entireties to fall within the language authorizing a federal tax lien. *Id.* at 276, 122 S.Ct. 1414. In *Craft*, respondent's husband failed to file income tax returns. As a result, a federal tax lien attached to "all [his] property and rights to the property." *Id.* Respondent and her husband owned a parcel of real property in Michigan as tenants by the entireties at the time the lien attached. After notice of the tax lien was filed, respondent and her husband executed a deed transferring the husband's interest in the property to respondent alone. When respondent subsequently attempted to sell the property, the IRS allowed her to sell the property with half of the net proceeds held in escrow pending the resolution of the government's interest in the property. The Court looked to Michigan law to determine what rights respondent's husband had in the entireties property and held that although Michigan law precluded her husband from unilaterally alienating the entireties property it did not prohibit him from possessing "property and rights to property" to which the federal tax lien could attach. *Id.*

■■■ "[I]n determining whether a federal taxpayer's state-law rights constitute 'property' or 'rights to property,' 'the im-

---

1. "There is no question that, in Pennsylvania, personalty may be held by the entireties." *In re Estate of Matson*, 374 Pa.Super. 61, 542 A.2d 147, 151 (1988), *citing Bramberry's Estate*, 156 Pa. 628, 27 A. 405, 408 (1893);

*Madden, et al. v. Gosztonyi Savings & Trust Co.*, 331 Pa. 476, 200 A. 624, 628 (1938). This includes proceeds from the sale of real property. *See, e.g., Bramberry's Estate*, 27 A. at 408.

portant consideration is the breadth of the control the [taxpayer] could exercise over the property.'" *Drye,* 528 U.S. 49, 120 S.Ct. 474, 145 L.Ed.2d 466, *quoting Morgan v. Commissioner,* 309 U.S. 78, 83, 84, 60 S.Ct. 424, 84 L.Ed. 585 (1940)(alteration in original). "Satisfaction of the federal standard for 'property' requires only that the interests give the taxpayer, at the time of attachment, a minimal level of control of the disposition of the asset for his or her personal benefit." *Asbestos Workers Local No. 23 Pension Fund v. United States of America, et al.,* 303 F.Supp.2d 551, 559 (M.D.Pa.2004), *citing Drye,* 528 U.S. at 58, 120 S.Ct. 474.

In *Craft,* 535 U.S. at 282, 122 S.Ct. 1414, the Supreme Court listed some, but not all, of the rights afforded a tenant by the entireties under Michigan law, noting that the rights listed were "among other rights." These rights include the right: 1) to use the property; 2) to exclude third parties from it; 3) to a share of income produced from it; 4) of survivorship; 5) to become a tenant in common with equal shares upon divorce; 6) to sell the property with the other tenant's consent and receive half the proceeds from the sale; 7) to place an encumbrance on the property with the other tenant's consent; and 8) to block the other tenant from encumbering the property unilaterally. *Id.* The Court further explained that

> Michigan law grants a tenant by the entirety some of the most essential property rights: the right to use the property, to receive income produced by it, and to exclude others from it.... These rights alone may be sufficient to subject the husband's interest in the entireties property to the federal tax lien. They gave him a substantial degree of control over the entireties property....

*Id.* at 283, 122 S.Ct. 1414.

 Unlike in Pennsylvania, where tenancies by the entireties are governed by the common law, *see, e.g., Clingerman v. Sadowski,* 513 Pa. 179, 519 A.2d 378 (1986), in Michigan the law pertaining to tenancies by the entireties has largely been codified. *See* M.C.L.A. §§ 557.71, 557.81, 557.101, 557.102 and 557.151. Despite this distinction, the rights possessed by a Pennsylvania tenant by the entireties closely follow those held by a Michigan tenant and, importantly, also include the three property rights deemed "essential" in *Craft.* Pennsylvania tenants by the entireties may use entireties property. *See, e.g., 1500 Lincoln Avenue,* 949 F.2d at 77 (a tenant by the entireties has "the right to possess and use the whole property"); *United States v. One Mercedes–Benz 30 Sel Vin. # WDBCA 33A1BB10331,* 604 F.Supp. 1307 (S.D.N.Y.1984), *citing Madden v. Gosztonyi Sav. & Trust Co.,* 331 Pa. 476, 200 A. 624, 627 (1938) ("under Pennsylvania law ... each tenant by the entireties ... has the right to possess, use and enjoy the property"). They have the right to receive a share of income produced by entireties property. *See, e.g., Wylie v. Zimmer,* 98 F.Supp. 298, 300 (E.D.Pa. 1951) ("The rents, issues and profits from real property held by entireties are received and owned in a like manner."); *Johns v. Johns,* 52 Pa. D. & C.2d 99 (Pa.Com.Pl.1971) (each tenant can collect and keep rental income). Tenants by the entireties may also exclude third parties from the entireties property. *See, e.g., Hunter v. Citifinancial, Inc.,* 284 B.R. 806, 811 (Bankr.E.D.Va.2002), *citing Gilliland v. Gilliland,* 751 A.2d 1169, 1172 (Pa.Super.2000) (under Pennsylvania law, a tenant by the entirety has "the right to exclude third parties from the property").

 The rights of tenants by the entireties in Pennsylvania go beyond these three essential rights, and reflect the

range of rights held by Michigan tenants. Tenants by the entireties in Pennsylvania also have a right of survivorship. *See, e.g., Gilliland,* 751 A.2d at 1172, *quoting Clingerman,* 519 A.2d at 381 ("A tenancy by the entireties is also characterized by the right of survivorship . . . ."). Tenants by the entireties become tenants in common with equal shares upon divorce. *See, e.g., Spears v. Spears,* 769 A.2d 523, 524 (Pa.Super.2001), *citing* 23 Pa.C.S.A. § 3507(a) ("Whenever married persons holding property as tenants by the entirety are divorced, they shall . . . thereafter hold the property as tenants in common of equal one-half shares in value."). They may sell entireties property with the other tenant's consent and may receive half the proceeds from the sale. *See, e.g., In re Hope,* 77 B.R. 470 (Bankr.E.D.Pa.1987) (wife has the right "to sell with the husband's consent"); *Hunter,* 284 B.R. at 811 ("Neither party may alien [or] convey . . . his or her interest although both together can alien, convey or encumber the estate."). They may place an encumbrance on the property with the other tenant's consent. *See, e.g., id.* (consent needed to encumber entireties property). They may also block the other tenant from encumbering the property unilaterally. *See, e.g., id.* ("[n]either party may . . . encumber" the property without consent).

 Plaintiff argues that one right which a Pennsylvania tenant does not possess that a Michigan tenant does is the right to unilaterally terminate the entireties estate. Plaintiffs cite to M.C.L.A. Section 557.101, which states

> In all cases where husband and wife own any interest in land as tenants by the entirety, such tenancy by the entirety may be terminated by a conveyance from either one to the other of his or her interest in the land so held.

This provision does not allow for unilateral alienation of entireties property by one spouse to a third party; instead it allows only that one spouse may unilaterally release his or her interest to the other spouse, thereby vesting that spouse with full and complete title in the entireties property. "Neither the husband nor the wife has an interest in [entireties] property which may be conveyed, encumbered or alienated without the consent of the other." *Rogers v. Rogers,* 136 Mich.App. 125, 356 N.W.2d 288, 293 (1984). In *Tucker v. Estate of Budman,* No. 235204, 2004 WL 134021, 2004 Mich.App. LEXIS 269 (Mich. Ct.App. Jan. 27, 2004), the court explained that "[a]lthough *Rogers* does not refer to [M.C.L.A. Section 557.101], or to the changes it wrought in the law of tenancy by the entireties, the case was published nine years thereafter, and is an accurate statement of the law following the 1975 enactment." Thus in Michigan, a spouse could quitclaim his or her title to his or her spouse without his or her consent thereby eliminating the protection from individual creditors afforded by a tenancy by the entireties.

 No such severance is possible in Pennsylvania. However, the absence of any right to alienate the entireties estate without spousal consent is not enough to establish that Mrs. Popky has no property or rights to property in a tenancy by the entireties. In *Craft,* the Supreme Court held that "[t]here is no reason to believe, however, that this one stick—the right of unilateral alienation—is essential to the category of 'property.'" *Craft,* 535 U.S. at 284, 122 S.Ct. 1414. The level of control over a property held in a tenancy by the entireties required for that property to fall within the reach of a federal tax lien is not high. The Court for the Middle District of Pennsylvania noted the courts' "willingness to recognize the existence of 'property' in circumstances in which the taxpayer

has only limited or contingent control over the asset" such as in the entireties property in *Craft* as an illustration of the standard's low threshold. *Asbestos Workers Local No. 23 Pension Fund v. United States of America, et al.,* 303 F.Supp.2d 551, 559 n. 7 (M.D.Pa.2004). "The statutory language authorizing the tax lien 'is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have.'" *Craft,* 535 U.S. at 283, 122 S.Ct. 1414, *quoting, United States v. Nat'l Bank of Commerce,* 472 U.S. 713, 719–20, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). To find that a spouse's rights in entireties property do not constitute property or rights to property belonging to him or her would "allow spouses to shield their property from federal taxation by classifying it as entireties property, facilitating abuse of the federal tax system." *Craft,* 535 U.S. at 285, 122 S.Ct. 1414. Therefore, Mrs. Popky cannot shield her share in the entireties property from being attached by a federal tax lien for her delinquent employee withholding.

■ Because the rights to use entireties property, to receive income produced by it and to exclude others from it reflect a sufficient degree of control over entireties property to create a right to property for the purposes of the federal tax lien, Mrs. Popky's interest in the proceeds from the sale of the Popky's home must be assigned a value. In *Craft,* the Supreme Court did not state how one spouse's interest in a tenancy by the entireties should be valued, leaving that question for the district court on remand. The Court of Appeals for the Third Circuit also has not decided the issue of valuation. Under Pennsylvania law, a tenancy by the entireties is an estate by which property is held jointly by husband and wife with the right of survivorship. While the Popkys continue as husband and wife, neither may destroy the tenancy or alienate any portion of it for his or her own exclusive benefit without the consent of the other. *Spinelli v. Spinelli,* 264 F.Supp. 107, 109 (E.D.Pa.1967).

Plaintiff argues that "the only 'stick' that has substance from a creditor's perspective is the debtor's right of survivorship. It is this morbid expectation on the part of the creditor, that his claim will survive the death of the non-debtor spouse, which has value." (Pl's. Mem. of Law in Support of Mot. for S.J. at 7). Plaintiffs suggest that the IRS would have an unconditional claim on the $43,324.43 in proceeds if, and only if, Dr. Popky predeceases Mrs. Popky and that the government could then take whatever action it needed to collect its debt from Mrs. Popky. Plaintiffs in effect argue that to allow the IRS to reach the proceeds before Mrs. Popky's right of survivorship ripens into a present interest would be to allow the government to take Dr. Popky's property, thus punishing him for a delinquency for which he is not responsible.

Plaintiffs' approach to the valuation question presents several problems. Where, as here, entireties property is held as cash, it is unclear how the IRS could allow the non-delinquent spouse to take advantage of his life estate in the cash proceeds while ensuring the right to property to which the lien has attached remains intact should the delinquent spouse's survivorship right ripen into a present interest. Even if the lien were to attach to Mrs. Popky's survivorship interest in the tenancy by the entireties and Dr. Popky's right to full and exclusive use of the property during his lifetime were recognized, including protection from alienation without his consent and the right to obtain title in fee simple if Mrs. Popky predeceases him, his rights, in effect, will have lost some of their value. He "would, as a practical matter, lose the right to control

and manage the estate. The government would be [his] cotenant in a form of property ownership which requires both parties to participate in nearly every decision concerning the property." *United States v. Lee*, 232 F.3d 556, 561 (7th Cir.2000), *citing 1500 Lincoln Ave.*, 949 F.2d at 77–78.[2]

The government argues that Mrs. Popky's interest in the proceeds should be valued at fifty percent. This approach reflects the IRS' guidance that "[a]s a general rule, the value of the taxpayer's interest in entireties property will be deemed to be one-half" I.R.S. Notice 2003–60, 2003–39 I.R.B. 643, 2003 WL 22100950. Although the government provides no case law to support its proposed valuation, the equal division of assets between spouses seems equitable and parallels the distribution of entireties property when an entireties estate is severed because of a sale with consent of both tenants, divorce or other reasons.

In *In re: Hope*, 77 B.R. at 470, the bankruptcy court held that a tenant receives one-half the proceeds from a sale of entireties property made with the consent of the other tenant. Upon divorce in Pennsylvania, a tenancy by the entireties becomes a tenancy in common by operation of law and the former spouses each become seized of a one-half undivided interest in the marital property upon the date of divorce. Either of the former spouses may then bring an action against the other to have the property sold and the proceeds divided between them. *See* 23 Pa.C.S. § 3507. *See also, Jawork v. Ja-*

*work*, 378 Pa.Super. 89, 548 A.2d 290, 291–92 (1988). In *Reifschneider v. Reifschneider*, 413 Pa. 342, 196 A.2d 324 (1964), an estranged wife consented to her husband's sale of bonds held by the couple as entireties property. When she thereafter disputed his rights to a portion of the proceeds, the Supreme Court of Pennsylvania held that where the husband could not show he had used that portion of the proceeds for both his and his wife's mutual benefit the wife was entitled to a fifty percent share in that portion. In *Spinelli v. Spinelli*, 264 F.Supp. 107, 109 (E.D.Pa. 1967) (emphasis added), the court explained that "if one spouse does *in any way* prejudice the rights of the other in [entireties] property, the latter has the right to demand an accounting, to have severed all entireties property held by them and to have awarded to him in his own right one half of it." Mrs. Popky has prejudiced the rights of Dr. Popky in the proceeds from the sale of their home by becoming a delinquent taxpayer. It would unfairly penalize Dr. Popky, who had no role in his wife's failure to fulfill her tax obligations, to be saddled with a federal tax lien on his share in the entireties property until his right of survivorship ripens into a fee simple interest in the entire proceeds. Following the reasoning in *Spinelli*, Dr. Popky should therefore be given a fifty percent share in the proceeds.

The IRS' proposed fifty-fifty division of the entireties property fails to account for the differing life expectancies of the spouses and thus the value of each spouse's

---

2. If the Popky's entireties property remained in the form of real property and not proceeds, the impact on Dr. Popky of a decision requiring the IRS to wait until Mrs. Popky's right of survivorship ripened into a present interest would also be pervasive.

Though [he] would be fully liable for taxes and other costs of homeownership in any tenancy by the entirety, in a normal tenancy

by the entirety, there would be a chance that [his wife], also fully liable for the property, would contribute to those expenses. Because the government ... would not be there with its checkbook, [he] could do little more than sit by and hope that the estate would not fall into disrepair.

*Lee*, 232 F.3d at 561.

share fails to reflect the probability that either spouse will ultimately have a right to the whole of the entireties property. In *In re Basher*, 291 B.R. 357 (Bankr.E.D.Pa. 2003), the bankruptcy court refused to value each spouse's interest in the entireties property as fifty percent. Instead, the court valued the debtor's interest as fifty percent of the equity in the property adjusted to reflect the younger age and longer life expectancy of the debtor's wife. *Id.* at 364. The court held that the IRS' proposed fifty-fifty valuation had to be adjusted to consider the impact of the relative survivorship interests of the debtor and his wife. *Id.* at 365–66. The United States Bankruptcy Court for the District of Oregon followed a similar approach in *In re Pletz*, 225 B.R. 206, 209 (Bankr.D.Or. 1997), *aff'd* 221 F.3d 1114 (9th Cir.2000). "The entireties interest should be valued for purposes [of] determining the amount of the IRS's secured claim by determining the fair market value of the property and multiplying it by debtor's actuarially determined interest." *Id.*

■■■ The government asserts that if I followed the reasoning of the bankruptcy court in *In re Basher* the relative shares of the plaintiffs in the proceeds from the sale of the Margo Lane property would be 60.902% for Mrs. Popky and 39.198% for Dr. Popky.[3] However, this approach relies on a speculative prediction that both spouses will have an average life span and it neither accounts for the health of the spouses nor for the likelihood of divorce or a sale of the property with the consent of both spouses which could break up the tenancy by the entireties. To include these factors would make valuation infi-

nitely more complicated and would again reach a valuation based merely on speculation. I conclude the only equitable solution to the valuation of Mrs. Popky's interest in the entireties property is to divide the proceeds equally between her and Dr. Popky. The federal tax lien can therefore properly attach to one-half the value of the proceeds from the sale of the Margo Lane property.

Once the value of the interest to which the lien has attached has been determined, the question remains as to whether the IRS can seize the entireties property at issue by means of a levy. The federal tax levy provides that

"If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon *all property and rights to property* (except such property as is exempt under section 6334) belonging to such person or on which there is lien provided in this chapter for the payment of such tax."

26 U.S.C. § 6331 (emphasis added). In *Hatchett v. United States*, 330 F.3d 875, 881–82 (6th Cir.2003), the Court of Appeals for the Sixth Circuit applied *Craft* in holding that the government could levy against and seize land and mortgage payments owed on land to satisfy the tax liabilities of the husband. The court noted, "[t]he scope of the federal tax lien and the scope of the levy are identical and interests subject to a federal claim are also subject to an administrative levy." *Hatchett v. Unit-*

---

**3.** Dr. and Mrs. Popky were born on December 22, 1935 and April 14, 1938, respectively. The government cites 26 C.F.R. Section 20.2031–7A, Table ET6 as its source for the IRS actuarial tables which provided the infor-

mation necessary to calculate the plaintiffs relative shares. I have been unable to locate such a table in 26 C.F.R. Section 20.2031–7A or elsewhere.

*ed States,* 330 F.3d 875, 881–2 (6th Cir. 2003).

■ Despite the Court of Appeals for the Sixth Circuit's assertion in *Hatchett* that "[t]he scope of the federal tax lien and the scope of the levy are identical," *id.,* there are several important distinctions between them. Although liens attach to all property of a taxpayer without limitation or exemptions, a levy may only be made on non-exempt property and may then only be made when procedurally proper. *See, e.g., United States v. Stowe,* 121 B.R. 549, 552 (N.D.Ind.1990) ("Federal tax liens, in particular, are very broad and may attach to a wide range of property, while the procedure of satisfying such claims through a levy (or the seizure or actual possession of the property) are more narrowly circumscribed.").

■ 26 U.S.C. Section 6334 details what property is exempt from levy and includes taxpayers' principal residences. 26 U.S.C. § 6334(a)(13)(B)(i), and § 6334(e)(1)(A).[4] A federal tax lien does not divest a taxpayer of his property or rights to property; it merely establishes priority in the IRS over a bona fide purchaser and other creditors. A levy is what is used to divest the taxpayer of his property and to transfer it to the government. Before a levy can be effective, the IRS must take certain procedural steps including: a tax assessment, a ten day notice and demand for payment under 26 U.S.C. Sections 6303 and 6331(a), expiration of the ten day period without payment by the taxpayer, a final notice before levy under 26 U.S.C. Section 6331(d), a notice of intention to levy with notification of rights to a Collection Due Process hearing under 26 U.S.C. Section 6330 and expiration of a thirty day period following the notice of intention to levy. "The IRS's levying power is limited because a levy is an immediate seizure not requiring judicial intervention ... A taxpayer subject to an IRS levy is provided certain protections such as notice and an opportunity to pay the taxes due before the seizure." *Jeffrey v. IRS,* 261 B.R. 396, 399 (Bkrtcy.W.D.Pa.2001), *quoting, U.S. v. Barbier,* 896 F.2d 377 (9th Cir.1990) (distinguishing a levy from a federal tax lien).

■ The Popkys' entireties estate is not covered by one of the statutory exemptions under 26 U.S.C. Section 6334. The IRS' lien attached to the proceeds from the sale of their Margo Lane property and not to the home itself, which would have been covered by the primary residence exemption under 26 U.S.C. Section 6334(a)(13)(B). It could therefore be subject to levy provided that the procedural requirements of the levy statute are followed. Plaintiffs argue the IRS obtained $43,324.43 in proceeds from the title company in violation of 26 U.S.C. Section 6330, which provides for notice and opportunity for hearing before levy, because the IRS sent a threatening letter to the buyer of the Margo Lane property. However, the IRS never levied Mrs. Popky's share of the proceeds because the title company (correctly or incorrectly) turned over her share when the government requested that

**4.** Section 6334 exempts from levy certain property including "[w]earing apparel and school books;" [f]uel provisions, furniture, and personal effects;" "[u]nemployment benefits;" "[u]ndelivered mail;" "[c]ertain annuity and pension payments;" "[w]orkmen's compensation;" "judgments for support of minor children;" a "[m]inimum exemption for wages salary, and other income;" "[c]ertain service-connected disability payments;" "[c]ertain public assistance payments;" "[a]ssistance under Job Partnership Training Act;" and "[r]esidences exempt in small deficiency cases and principal residences and certain business assets exempt in absence of certain approval or jeopardy." 26 U.S.C. § 6334(a)(1)-(13).

it do so. Because the federal tax lien against Mrs. Popky rightly attached to her share in the proceeds held in a tenancy by the entireties with her husband, I will grant summary judgment to the United States.

■■■■■ The United States has also filed a counterclaim for the balance of Mrs. Popky's trust fund taxes. The Certificate of Official Record here shows that Mrs. Popky was assessed a civil penalty under 26 U.S.C. § 6672 on which she still owes $15,814.47, with statutory additions accruing from June 24, 2003. Section 6201 of the Internal Revenue Code authorizes the Secretary of Treasury or his delegate to assess all taxes, including interest and additions to tax imposed by the Code. 26 U.S.C. § 6201. Mrs. Popky admits that "she continues to have a Trust Fund Recovery Penalty" liability but states that she does not know what her specific balance is. The balance on the IRS' Certificate of Official Record is presumed to be correct. *Welch v. Helvering*, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933), *Psaty v. United States*, 442 F.2d 1154 (3d Cir.1971); *United States v. Green*, No. 01–3849, 2002 WL 31513379, **3–4, 2002 U.S. Dist. LEXIS 21824 at * 9–11 (E.D.Pa., October 22, 2002). Because Mrs. Popky has not provided any evidence to rebut the presumption of correctness, no genuine issue of material fact remains on this question and I will grant the government's motion for summary judgment on this issue as well.

### ORDER

AND NOW, this 15th day of June 2004, after considering the parties' cross-motions for summary judgment and for the reasons set forth in the accompanying memorandum, it is ORDERED that:

1) defendant's motion for summary judgment is GRANTED and judgment is hereby entered in favor of defendant United States of America and against plaintiffs Howard D. and Sheila A. Popky with respect to plaintiffs claim in the amount of $43,324.43;

2) plaintiffs' motion for summary judgment is DENIED; and

3) judgment is entered in favor of defendant United States of America and against plaintiffs Howard D. and Sheila A. Popky in the amount of $15,814.47 plus interest that accrues thereon from June 24, 2003 until such time as the judgment is fully paid.